STATE, Respondent, v. LENARCHICK, Appellant.

*No. 75–364–CR. Argued October 5, 1976.—
Decided November 30, 1976.*
(Also reported in 247 N. W. 2d 80.)

For the appellant there were briefs by *Stephen M. Glynn, James M. Shellow* and *Shellow & Shellow* and oral argument by *Mr. Glynn* and *James M. Shellow,* all of Milwaukee.

For the respondent there was a brief by *Bronson C. La Follette,* attorney general, and *Thomas J. Balistreri,* assistant attorney general, and oral argument by *William L. Gansner,* assistant attorney general.

HEFFERNAN, J. The defendant, Joseph Robert Lenarchick, after a jury trial, was found guilty of first degree murder and sentenced to life imprisonment. Post-conviction motions were denied.

The defendant was charged with the murder of Ivory Williams at a public park in the City of Milwaukee known as the alternate site.

Allegedly, Williams had at some previous time "raped" Lenarchick's wife. There was evidence that Lenarchick was going to get Williams. There was also proof that, at the time of the killing, Lenarchick was at the scene and had in his possession a bayonet which allegedly was

the instrument that caused the fatal wound in Williams' neck. Because we decide this case on nonevidentiary grounds and remand for a new trial on the basis of trial error, we do not set forth the underlying facts in detail.

The appeal is grounded entirely on alleged errors committed in respect to the admission of evidence at trial.

The most significant assignment of error results from the admission of an out-of-court statement given by Deborah Miles to the Milwaukee police which purported to recount the defendant's admission to Miles that he had killed Williams.

It is acknowledged on this appeal by defense counsel that, had Miles merely recounted in court Lenarchick's statement, it would have been admissible as an admission.[1]

At trial, however, Deborah Miles denied any recollection of any inculpatory admission by Lenarchick. Moreover, she denied any recollection of repeating such statement to the police. This loss of memory was consistent with her testimony at the preliminary examination when she denied any recollection of any inculpatory statement given to her by Lenarchick or any recollection of recounting that statement to the police. The record shows that at trial Deborah Miles admitted to talking to Lenarchick and also to having a conversation with the police officers. At the preliminary examination she stated that she would not deny having given Lenarchick's statement to the police but she could not remember it.

After her denial of any recollection of the admissions of Lenarchick and of the statement to the police, the

---

[1] Counsel denominates the statement as an "admission against penal interest." We believe that terminology is appropriate only where the statement or admission of third party is sought to be introduced in exculpation of the defendant. Here the statement of Lenarchick is simply an "admission" admissible under an exception to the hearsay rule.

prosecution sought to refresh her recollection by asking questions which in effect put the substance of her alleged statement before the jury.

Because the court found her answers inconsistent with the prior statement to the police, the prosecution was permitted to place her statement in evidence by calling the officer to whom the statement was allegedly given.

That statement recounted Lenarchick's admission that he had stabbed Williams in the neck.

While Miles professed no memory of the admissions, she acknowledged that she had received a telephone call from Lenarchick shortly after the killing, that he came to her residence, and that while there cut his hair, shaved his beard, and secured a partial change of clothing. She admitted conversing with him, but she claimed to have no memory of the content of those conversations.

The police officer was called, and he recounted Miles' statement.

Subsequently, Lenarchick took the stand in his own defense and testified that he had indeed called Miles and told her he was in trouble and wanted to speak to her. When he attempted to testify about the content of his conversation with Miles, the prosecutor objected on the ground that the statement was "self serving." That objection was sustained.

Defendant argues that this complex of trial facts demonstrates a series of errors that warrant a reversal and a new trial.

It is contended that the admission of the testimony of the police officers in respect to what Miles told them of Lenarchick's confession was double hearsay and was hence inadmissible. Counsel also peripherally argues that the police statement by Miles was not admissible as a prior inconsistent statement, for she never testified to any inconsistent facts but merely disclaimed any recol-

lection of the particular conversation with Lenarchick or of the particular conversation and statement to the police.

The most difficult and most serious claimed error, allegedly of constitutional proportions, is that Lenarchick was denied the sixth amendment right to be confronted by the witness against him. In effect Miles was such witness. It was her testimony, recounted by the police, that was of crucial and significant proportions in securing the convictions. Through her as a conduit for Lenarchick's statement, the police were permitted to introduce what was in effect Lenarchick's confession to the crime.

The defendant summarizes the confrontation argument thus:

"In the case at bar, the witness neither affirmed making the statement to the officer, nor denied it. Defendant was as effectively deprived of cross-examining her as if she had refused to testify. When a witness denies making a statement, there may be reasons offered to support the denial, and those reasons may be shown to be false. However, when the witness does not deny the statement but rather denies recollection of the statement, as in the instant case, there is nothing to refute by cross-examination or other impeachment."

Additionally, it is argued that, not only was Lenarchick denied the constitutional right of confrontation, because cross-examination was impossible, but also he was erroneously denied the right to testify that he did not confess to Miles at all.

The traditional view of the confrontation clause, preeminently expressed by Wigmore, is that it is merely a restatement of the common-law hearsay rule:

"The rule sanctioned by the Constitution is the hearsay rule as to cross-examination, with all the exceptions that may legitimately be found, developed, or created therein." 5 Wigmore, *Evidence,* sec. 1397, p. 158.

■ That the Wigmorean statement is wholly accurate is now subject to serious question. In a series of cases the United States Supreme Court indicated that, while admissibility in an evidentiary sense under state law is always a threshold for the receipt of evidence, compliance with a state's hearsay rule does not *ipso facto* insure compliance with the constitutional mandate for confrontation in a criminal case.

In *Pointer v. Texas*, 380 U.S. 400 (1965), the Supreme Court held that the sixth-amendment right of confrontation includes the opportunity to cross-examine and applies to state proceedings as well as to the federal courts. While *Pointer* may not have been representative of reasonable due-process hearsay procedure even at the time it was written, the Supreme Court found that the use of the traditional hearsay doctrine of *Pointer* in respect to proof of prior testimony violated the constitutional safeguard of confrontation of the sixth amendment.

In *California v. Green*, 399 U.S. 149, 155–156 (1970), the court said:

"While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception. See *Barber v. Page*, 390 U.S. 719 (1968); *Pointer v. Texas*, 380 U.S. 400 (1965). The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied."

In Justice Harlan's concurring opinion in *Green*, page 173, he said, referring to earlier decisions:

"These decisions have, in my view, left ambiguous whether and to what extent the Sixth Amendment 'constitutionalizes' the hearsay rule of the common law."

In *Dutton v. Evans,* 400 U.S. 74, 86 (1970), the court stated:

"It seems apparent that the Sixth Amendment's Confrontation Clause and the evidentiary hearsay rule stem from the same roots. But this Court has never equated the two, and we decline to do so now."

It thus appears that, although compliance with, or exception to, a state's hearsay rule is the *sine qua non* of admissibility, admissibility on that basis alone may not satisfy the sixth amendment.

Nevertheless, we are presented with the threshold question of admissibility under the Rules of Evidence of Wisconsin. 59 Wis.2d R1 ff. (1973), secs. 901–911, Stats.

The statement read into the record by the police officer was arguably "double hearsay," for it consisted of the out-of-court statement of Miles relating the out-of-court statement of the defendant. That fact in itself does not warrant exclusion. Sec. 908.05, Stats., provides:

"Hearsay within hearsay. Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in this chapter."

Lenarchick's statement to Miles is not excluded by the rule, and as conceded by the defendant, it constituted an admission and under sec. 908.01(4)(b), Stats., is not considered hearsay:

"908.01(4) . . . A statement is not hearsay if:
"(b) *Admission by party opponent.* The statement is offered against a party and is:
"1. His own statement, in either his individual or a representative capacity."

Whether Miles' statement, not recounted by her on the stand but produced by the police, was admissible depends upon that portion of the Wisconsin Rules of Evidence which labels as non-hearsay prior inconsistent statements:

"908.01 (4) (a):
*"Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
"1. Inconsistent with his testimony."

Therefore, the prior statement of Miles to the police was admissible if in fact her testimony was inconsistent —and the trial judge so ruled—and she was *subject* to cross-examination.

■ She was subject to cross-examination and was in fact cross-examined by Lenarchick's counsel. Accordingly, that portion of the rule of evidence permitting admission of the statement was satisfied. We defer discussion of whether, under the circumstances of her alleged lack of recollection, the opportunity for cross-examination was meaningful enough to satisfy the constitutional strictures of the confrontation clause. As a matter of Wisconsin evidence law, we hold, however, that she was subject to cross-examination. The recounted statement, put into evidence by the police, was therefore admissible as a matter of state evidence law.

Whether it can be said that her trial testimony, which disavowed any recollection of portions of the conversation with Lenarchick and of any specifics of the statement to the police, was "inconsistent" with the statement produced is a closer question.

McCormick, *Evidence* (2d ed.), sec. 251, pages 603–604, addresses this question:

"It is hard to escape the view that evidence of a previous inconsistent statement, when declarant is on the

stand to explain it if he can, has in high degree the safeguards of examined testimony. . . .

"A subsidiary question is, when is a prior statement inconsistent? On the face of it, a prior statement describing an event may not be inconsistent with testimony that the witness no longer remembers the event. Yet circumstances clearly may be such as to warrant the judge in concluding that the assertion of lack of memory is untrue and in effect a repudiation of the prior statement, thus justifying its admission in evidence."

In *United States v. Insana,* 423 F.2d 1165 (2d Cir. 1970), where the court was confronted by a situation where the witness denied any recollection of prior statements, it held that the prior statement was admissible, without relying on the then proposed federal rules, which rules, as do ours, consider the subject statement not hearsay.

The court there said, page 1169:

"The question presented by the latter approach under our present rules is whether former sworn testimony [2] with respect to the facts can be considered inconsistent with a present disavowal of memory of those facts. Since under the particular circumstances of this case we answer the question in the affirmative, we have no occasion to pass upon . . . Proposed Rules of Evidence."

*People v. Green,* 3 Cal.3d 981, 92 Cal. Rptr. 494, 479 P.2d 998 (1971), on remand from the United States Supreme Court in *California v. Green,* 399 U.S. 149 (1970), *supra,* also held that lack of memory of a previous statement furnished the basis for an inconsistency ruling.

Whether what a witness says on the stand is inconsistent with a prior statement lies within the discretion of the trial judge. McCormick, *supra,* page 604; *People v. Green, supra.*

---

2 N.B. Prior cross-examined testimony was not considered to be producible as "hearsay satisfied" because the witness was physical-

It is apparent that the trial judge, with reason, doubted the good faith of Miles' trial protestations of lack of memory,[3] and, on that basis and in the exercise of judicial discretion, could declare her trial testimony inconsistent and lay the ground for the admission of the police statement.

We accordingly hold that, under the Wisconsin Code of Evidence, where a witness denies recollection of a prior statement, and where the trial judge has reason to doubt the good faith of such denial, he may in his discretion declare such testimony inconsistent and permit the prior statement's admission into evidence.

Having determined that, as a matter of the Wisconsin law of evidence, the statement of Miles to the police was admissible, the task remains of determining whether the confrontation requirement of the United States Constitution—the sixth amendment—and the parallel clause of the Wisconsin Constitution—art. I, sec. 7—is satisfied.

The sixth amendment to the United States Constitution requires that, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Wisconsin Constitution requires that a defendant have the right "to meet the witnesses face to face."

That meeting the witness "face to face" is not a literal requirement is borne out by the recognized and constitutionally approved exception—in terms of confrontation requirements—for dying declarations. See *Miller v. State*, 25 Wis. 384 (1870) ; *State v. Martin*, 30 Wis. 216 (1872) ; *State v. Dickinson*, 41 Wis. 299 (1877), 5 Wigmore, *Evi-*

---

ly present, i.e., "available." Also such testimony arguably (although not in Wisconsin since *Gelhaar v. State*, 41 Wis.2d 230, 163 N.W.2d 609 (1969)) would be only for impeachment purposes and not for affirmative proof.

[3] Reference is made by the trial judge in the record to the demeanor and attitude of Witness Miles.

*dence,* sec. 1396 ff.; and *Pointer v. Texas, supra,* p. 407, and for prior recorded testimony of a deceased person.

Yet, as *Pointer* held, an essential ingredient of due process, binding on the states, is the right to confront witnesses—a right that embraces the opportunity to cross-examine adversary witnesses.

Justice Black speaking for the court in *Pointer* stated, at 404:

"It cannot seriously be doubted at this late date that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him."

This statement, taken literally, is of course, inconsistent with the United States Supreme Court's approval in the same case of dying declarations; but in this area of constitutional law the opinions of the Supreme Court have exemplified the rule against "petty consistency."

It remains true, however, that cross-examination is the cornerstone of the right of confrontation. It is, as Wigmore said, 5 Wigmore, *Evidence,* sec. 1367, p. 32, "[T]he greatest legal engine ever invented for the discovery of truth," but it may be dispensed with under some circumstances where an uncross-examined statement is clothed with special indicia of trustworthiness. The hearsay rule and its exceptions, to a degree, may afford in some cases a sufficient degree of reliability. But, as stated above, the satisfaction of the hearsay requirements and satisfaction of the confrontation rule are not necessarily congruent.

In addition to assuring the right to cross-examination, the confrontation requirement, by United States Supreme Court opinions, appears to have strong overtones of "due process."[4]

[4] See: *Confrontation and the Hearsay Rule,* 75 Yale L.J. 1434 (1966); *The Confrontation Test for Hearsay Exceptions: An Un-*

*Pointer,* for example, could be explained by the lack of counsel at the preliminary examination or on the ground of prosecutorial misconduct or neglect in failing to produce arguably available witnesses. The whole concept of "unavailability" as a device to permit the use of prior testimony smacks of due process where the test of "unavailability" is the diligence and good faith used by the prosecution in securing the witness.

In *California v. Green, supra,* which, among other things, gave specific constitutional approval to the Wisconsin rule in *Gelhaar, supra,* the court speaking through Justice White gave heavy emphasis to the good faith in the physical production of witnesses. This is essentially a due-process position.

The court in *Green,* pp. 167–68, said:

"As in the case where the witness is physically unproducible, the State here has made every effort to introduce its evidence through the live testimony of the witness; it produced Porter at trial, swore him as a witness, and tendered him for cross-examination. Whether Porter then testified in a manner consistent or inconsistent with his preliminary hearing testimony, claimed a loss of memory, claimed his privilege against compulsory self-incrimination, or simply refused to answer, nothing in the Confrontation Clause prohibited the State from also relying on his prior testimony to prove its case against Green."

In a footnote (n. 16, p. 167) relevant to the above, the court stated:

"But the only 'necessity' that exists in either case is the State's 'need' to introduce relevant evidence that through no fault of its own cannot be introduced in any other way."

While it is true that *Green,* in part, involved the testimony of a witness who had been subject to cross-exami-

certain *Standard,* 59 Calif. L. Rev. 580; Falknor, *Former Testimony and the Uniform Rules,* 38 N.Y.U.L. Rev. 651.

nation at a previous hearing, nevertheless the emphasis is upon the prosecutor's obligation to place even an unwilling and forgetful witness on the stand to subject him to cross-examination. This is essentially a due-process position, as distinguished—if such distinction be possible—from an abstract confrontation question.

In *Green,* Justice Harlan's concurring opinion emphasized the preeminence of satisfying due process as the essential in permitting the admission of hearsay. He said:

"If 'confrontation' is to be equated with the right to cross-examine, it would transplant the ganglia of hearsay rules and their exceptions into the body of constitutional protections. The stultifying effect of such a course upon this aspect of the law of evidence in both state and federal systems need hardly be labored, and it is good that the Court today, as I read its opinion, firmly eschews that course. (P. 173)

". . . I reach two conclusions. First, the Confrontation Clause of the Sixth Amendment reaches no farther than to require the prosecution to *produce* any *available* witness whose declarations it seeks to use in a criminal trial. Second, even were this conclusion deemed untenable as a matter of Sixth Amendment law, it is surely agreeable to Fourteenth Amendment 'due process,' which, in my view, is the constitutional framework in which state cases of this kind should be judged. For it could scarcely be suggested that the Fourteenth Amendment takes under its umbrella all common-law hearsay rules and their exceptions. (P. 174)

"What I would hold binding on the States as a matter of due process is what I also deem the correct meaning of the Sixth Amendment's Confrontation Clause—that a State may not in a criminal cause use hearsay when the declarant is available." (P. 186)

Justice Harlan retreated in part from this position in his concurrence in *Dutton v. Evans,* 400 U.S. 74 (1970), but the retreat was not on the due-process aspect per se, but rather was in response to the fear that the test

of availability would too severely curtail the use of reasonable hearsay exceptions. He said:

"Nor am I now content with the position I took in concurrence in *California v. Green, supra,* that the Confrontation Clause was designed to establish a preferential rule, requiring the prosecutor to avoid the use of hearsay where it is reasonably possible for him to do so—in other words, to produce available witnesses. Further consideration in the light of facts squarely presenting the issue, as *Green* did not, has led me to conclude that this is not a happy intent to be attributed to the Framers absent compelling linguistic or historical evidence pointing in that direction. It is common ground that the historical understanding of the clause furnishes no solid guide to adjudication.

"A rule requiring production of available witnesses would significantly curtail development of the law of evidence to eliminate the necessity for production of declarants where production would be unduly inconvenient and of small utility to a defendant. Examples which come to mind are the Business Records Act, 28 U.S.C. secs. 1732–1733, and the exceptions to the hearsay rule for official statements, learned treatises, and trade reports. See, *e.g.,* Uniform Rules of Evidence 63 (15), 63 (30), 63 (31); *Gilstrap v. United States,* 389 F.2d 6 (CA 5 1968) (laboratory analysis). If the hearsay exception involved in a given case is such as to commend itself to reasonable men, production of the declarant is likely to be difficult, unavailing, or pointless." (Pp. 95, 96).

This retreat does not vitiate the essential due-process position of Justice Harlan. It does represent, however, a position that, even though there be no face-to-face confrontation, some testimony is thought to be so trustworthy that due process and confrontation are satisfied as a practical matter. Certainly it remains viable in terms of the problem of prosecutorial overreaching and misconduct.

In the instant case, under any theory, there appears to be no due-process problem. All of the witnesses were

produced in court. No attempt was made to introduce testimony, the declarant of which was unavailable. Any due process rule of preference under the Harlan theory was satisfied.

We conclude, therefore, that the prosecutor here did make every effort to produce the best available evidence. He made a diligent, good-faith effort to produce the witness to testify. Due process can demand no more.[5]

While the writer of this opinion would place the greater emphasis on due process as the essential ingredient of compliance with the confrontation clause, nevertheless, the right to a meaningful cross-examination remains a major criterion of constitutional confrontation. It is difficult or impossible, however, to assert that it is the *sine qua non*, in light of the statements of the United States Supreme Court that dying declarations satisfy that requirement.

Yet, as Wigmore, who conceived of the confrontation clause as merely a codification of the common-law hearsay rule, said, "The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.*" Wigmore, *supra,* sec. 1395, p. 150; see also, N.Y.U.L. Rev., *supra,* p. 656.

It would appear, therefore, of doubtful constitutional propriety to conclude that mere availability or presence of a witness, which would satisfy the due-process requirement of being available, would satisfy the purpose behind the confrontation rule, if in fact the witness could not be cross-examined.

Despite the incongruousness of permitting dying declarations as satisfying the confrontation clause, an opportunity for a cross-examination that has some meaning in the fact-finding process is necessary. Where, for example, a witness has clothed himself with the cloak of

---

[5] This is not to say that due process diligence will necessarily result in a sufficiency of evidence. That sufficiency of the evidence is, however, specifically conceded by the defendant herein.

the fifth amendment, the United States Supreme Court has held that a meaningful confrontation is denied.[6]

In the instant case the witness Miles denied any recollection of receiving the underlying statement of Lenarchick or of recounting it to the police. Justice Harlan would find that of no significance, because due process, the availability of relevant witnesses, was in this case at least assured by diligent prosecutorial conduct. See *Green,* Harlan concurring opinion, *supra,* pages 188–89.

The majority opinion in *Green,* however, placed emphasis on cross-examination, stating:

". . . the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." (P. 158)

We are obliged, despite the murkiness of the United States Supreme Court's holdings, to address ourselves to the question of the efficacy of any cross-examination of Deborah Miles. She was a forgetful witness, who, by her alleged loss of memory, was found by the trial judge to be inconsistent in respect to her prior statement given to the police. Under the rules of evidence of this state, we have above found that determination appropriately within the discretion of the trial judge.

The defendant's attorney in briefs and argument to this court contends that the right to cross-examine a forgetful witness is tantamount to no cross-examination at all.

Initially, the problem must be viewed subjectively on the basis of the direct-examination testimony of the witness Miles. While she alleged forgetfulness of any inculpatory statement of Lenarchick, and of any recounting of that statement to the police, her direct testimony was replete with evidence that Lenarchick

---

[6] *Douglas v. Alabama,* 380 U.S. 415 (1965).

did call her on the night of the murder, did cut his hair and shave his beard at her house, and did secure a change of clothing. Counsel chose not to cross-examine on these matters that were at the very least consistent with guilt. No attempt was made to qualify or attack those assertions of the witness Miles. While, as a matter of sound trial technique, counsel for a defendant, may decide not to cross-examine on certain points of direct testimony, here counsel with great care cross-examined only on matters on which the witness on direct claimed lack of memory.

As a consequence of such lack of memory, counsel claims that his client was not confronted by the witness and sought to have the testimony of the witness Miles excluded *in toto*. Surely that argument sweeps too broadly. Under no tenable constitutional or evidentiary theory would it have been appropriate to exclude Miles' testimony *in toto*.

Nor can we conclude that confrontation was denied in respect to the matters of which Miles professed lack of recall.

The rule of law we follow in that respect is stated in *United States v. Payne,* 492 F.2d 449, 454 (1974) :

"It is true that where complete failure of recollection is claimed, the truth of the earlier statement is not verified by an oath, but as Judge Learned Hand stated in *Di Carlo v. United States,* 6 F.2d 364, 368 (2 Cir. 1925) :
" 'The possibility that the jury may accept as the truth the earlier statements in preference to those made upon the stand is indeed real, but we find no difficulty in it. If, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of that person and in court. There is no mythical necessity that the case must be decided only in accordance with the truth of words uttered under oath in court.'
"It is also true that where complete failure of recollection is claimed the truth of the earlier statement is not

tested by cross-examination with regard to its substantive content, but *California v. Green*, 399 U.S. at 168, 90 S.Ct. at 1940, indicates that we should reverse only if we conclude that 'apparent lapse of memory so affected . . . [the] right to cross-examine as to make a critical difference in the application of the Confrontation Clause . . . .' "

In the instant case it is apparent that the purported lapse of memory was selective and was favorable to the defendant. It is obvious, therefore, that prudent counsel would not cross-examine Miles in an effort to show that she had in fact heard Lenarchick's statement and she had in fact recounted it to the police. But it is another thing to then allege that counsel was denied the opportunity to cross-examine. He had that opportunity, but, as a matter of trial strategy and prudence, failed to do so. But the mere fact that possible cross-examination may reveal facts adverse to a client ought not implicate the confrontation clause. The claim of constitutional error is wholly specious.

■ A review of the record shows that counsel failed to cross-examine the witness Miles on matters that she did remember and wisely avoided pressing her in respect to her lack of recollection of the admission of his client. The claim of inability to cross-examine is without foundation. We conclude that the claim of constitutional error is unfounded.

We do, however, find error in the court's failure to allow Lenarchick to testify and deny that he admitted the killing to Miles.

■ The testimony which Lenarchick wished to present was in respect to the confession offered by the prosecution through the testimony of Miles and the police. The testimony which Lenarchick sought to offer was self serving in that it would have constituted a denial of the confession. Such testimony is admissible as a "part of the res gestae or of a confession offered by the prosecution." Wharton, *Criminal Evidence* (13th ed.), sec. 303, p. 97.

The defendant also argues, correctly we conclude, that he was denied the right to defend himself when he was not permitted to deny or explain the incriminating statement admitted through Miles and the police. Under long-established Wisconsin law, Lenarchick's proffered testimony was admissible. In *Mack v. State*, 48 Wis. 271, 4 N.W. 449 (1880), a prosecution witness was permitted to testify to the defendant's conversation with the deceased. The trial court refused to permit the defendant to testify as to her version of the conversation. This court, reversing, said:

"The evidence being clearly competent, and having been introduced by the state, it would seem to be equally clear that the accused should have been permitted to prove the same conversation by any other witness who was present and heard the same. She would not be concluded by the version of it given by the witness Dickerson. She looked upon him as prejudiced, and claimed that he had not given a true version thereof. The law having made her a witness in her own behalf, she was as competent to testify upon the subject as any other person who might have been present and heard the same. . . . when one party has given a conversation in evidence, or a part thereof, which is material in the case, the other has the right to give his version of the same conversation by other witnesses who were present and heard it." (Pp. 277–78)

Because the state submitted the police officer's version of the confession related by Miles, the defendant should have been permitted the opportunity to rebut with his version of the conversation though his version were self serving. The failure to permit Lenarchick's testimony in this respect was error and was prejudicial.

While there was a great deal of evidence of a circumstantial nature that could have led the jury to conclude that Lenarchick had stabbed Williams, the testimony with respect to the conversation constituted a direct confession of guilt and could not have been other than

a crucial factor in influencing the jury's verdict. The refusal to permit the defendant to counter this evidence denied him the opportunity to contravene the most damning portion of the prosecution's case. Had the jury been given the opportunity to hear the defendant's version of the conversation, it might well have disbelieved the recounted statement of Miles and would thus be obliged to reconcile the conflicting circumstantial evidence of Lenarchick's guilt. The error requires reversal.

Additionally, we conclude that prejudicial error occurred when defense counsel was not permitted fully to cross-examine Nolte. Nolte was present at the scene of the crime, and it was the defendant's theory of the case that Nolte, not Lenarchick, had committed the murder.

During cross-examination defense counsel asked Nolte whether any charges against him had been dismissed by the district attorney's office subsequent to Lenarchick's preliminary hearing. An objection was sustained. In chambers, defense counsel offered to prove that a prior charge had been dismissed against Nolte while Lenarchick's case was pending and that two misdemeanors had been put on an adjourned day-to-day calendar. The trial court, however, ruled that counsel could only ask Nolte whether any promises had been made in exchange for his testimony. That ruling was erroneous.

■ We stated in *State v. Gresens,* 40 Wis.2d 179, 186, 161 N.W.2d 245 (1968) :

"The defense has a right to know the basis for the immunity; what other promises were made, if any; and whether the witness has been influenced or coached by the prosecution."

*Gresens* emphasized that a defendant on cross-examination has the right to bring out the motives of state witnesses. This permits an avenue of questioning broader than whether the state has made specific promises.

The case of *Whitton v. State*, 479 P.2d 302 (Alaska 1970), is persuasive on this question, and we follow its holding. In *Whitton,* defense counsel attempted to explore pending state charges, but the court only permitted defense counsel to ask the witness whether the state had made any specific promises in exchange for his testimony. The Supreme Court of Alaska found this limitation upon cross-examination too restrictive. It stated:

"The fact that what is brought out, either on cross-examination or by extrinsic evidence, may tend to prove that the witness committed wrongful acts, does not make this method of showing bias impermissible. To show bias is indeed a form of impeachment. But the objective here is not to attack credibility on the theory that the witness, because he has committed wrongful acts, is not likely to be truthful. The main objective is to show that the witness may have expected leniency or immunity from prosecution if he gave testimony in favor of the state, and it is necessary to show the commission of wrongful acts in order to establish the basis for such an expectation." (P. 317)

We deem the reasoning of the Alaska Supreme Court pertinent to this case.

In the instant case the offer of proof showed that one charge had been dropped and two charges were being held open. To influence the testimony, it would not have been necessary for the state to have made any promises to the witness. Although no promises had been made to Nolte, he may well have been testifying favorably to the state in the hope and expectation that the state would reward him by dropping or reducing pending charges. Even though that expectation were absurd, defense counsel had the right and duty to explore the witness' motives. When a witness has been criminally charged by the state, he is subject to the coercive power of the state and can also be the object of

its leniency. The witness is aware of that fact, and it may well influence his testimony. A defendant, as an ingredient of meaningful cross-examination, must have the right to explore the subjective motives for the witness' testimony. Nolte was a witness present at the site of the murder, and his testimony was highly detrimental to the defendant. The denial of the right of the defendant to elicit possible prejudice or bias of that witness constituted prejudicial error.

The defendant also argues that the trial court unduly restricted the impeachment of Nolte during the course of cross-examination of Detective Domagalski. On the ground that similar questions had been asked of Nolte, the responses to which had effectively shown the inconsistency of Nolte's statements, the trial judge refused to allow further impeachment of Nolte by questions of the police officer. At oral argument, counsel for the defendant indicated that the questions he had been permitted to ask of Nolte were inadequate and that, therefore, the examination of Domagalski was necessary.

Our reading of the record shows no inadequacy or undue limitation of the examination of Nolte in this respect. Counsel was permitted a detailed and extensive cross-examination of Nolte in regard to his statement. Even relevant evidence may be excluded on the grounds of cumulativeness. Sec. 904.03, Stats., provides:

"904.03 *Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.* Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

██ The court was within its discretion to exclude as cumulative the further impeachment testimony.

Nolte was also allowed to testify that, shortly after the stabbing, a person known as Popeye stated, "Joe

really fucked Williams up bad." This evidence was objected to on the single ground that there was no evidence to show that the witness Popeye actually witnessed the event to which his declaration related.

The declaration was admitted as a *res gestae* statement. Under the Code of Evidence, the *res gestae* exception to the hearsay rule is denominated an excited utterance. The rule is codified in sec. 908.03(2), Stats. The rule permits such utterance as an exception to the hearsay rule:

"A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

There is no independent evidence to show that Popeye in fact observed the stabbing. However, the rule quoted above does not require such independent evidence. McCormick's observations are in accord with the conclusion that personal observation of a startling event is not required if the declarant is under the influence of the startling event. He states:

"Under generally prevailing practice, the declaration itself is taken as sufficient proof of the exciting event and therefore the declaration is admissible despite absence of other proof that an exciting event occurred. . . . Nor is it necessary that he have actually observed the event. . . ." McCormick, *Evidence* (2d ed.), sec. 297, p. 705.

It is reasoned that the inference that the declarant saw the event should be permitted from the utterance itself and from the circumstances in which it was given. The rationale of the excited-utterance exception is that the utterance stems from the nonrational, and thus objectively truthful, process of the person at the event. Accordingly, it belies the rational of the exception to conclude that the declarant made the excited utterance on the basis of an event of which he had no knowledge.

██ ██ Whether an excited utterance is admissible in evidence rests upon the sound discretion of the trial court. This court has repeatedly held that the exercise of such discretion will be upheld unless the record demonstrates that the ruling is manifestly wrong. *Cossette v. Lepp*, 38 Wis.2d 392, 398, 157 N.W.2d 629 (1968); *Cornwell v. Rohrer*, 38 Wis.2d 252, 259, 156 N.W.2d 373 (1968). Under the facts of this record, we cannot conclude that the trial judge abused his discretion in admitting the utterance of Popeye.

The defendant contends that the trial court erred when it ordered defense counsel, during the course of cross-examination, to produce an affidavit defense counsel had taken of the state's witness, Deborah Miles. The defendant contends that sec. 971.24, Stats., would compel him to produce only a prior statement of a witness produced by the defense and not a prior statement of a witness produced by the prosecution.

Counsel for the defendant also contends that his client was denied equal protection of the law when, later in the course of the trial, he was denied the right to secure a prior statement given by a defense witness whose statement was allegedly in possession of the prosecution. Basically, defense counsel's argument is that only a party who calls a witness can be compelled to produce a statement for the other party. This position is not sustained by the statute. Sec. 971.24(1) and (2), Stats., provides:

"971.24 Statement of witnesses. (1) At the trial before a witness other than the defendant testifies, written or phonographically recorded statements of the witness, if any, shall be given to the other party in the absence of the jury. For cause, the court may order the production of such statements prior to trial.

"(2) Either party may move for an in camera inspection by the court of the documents referred to in sub. (1) for the purpose of masking or deleting any material which is not relevant to the case being tried. The court shall mask or delete any irrelevant material."

 We conclude that these statutes require that all written or phonographically recorded statements of the witness be produced. Nothing in the statute indicates that only the party who calls the witness is subject to the statute. All statements whether they be in possession of the direct-examining counsel or the cross-examining counsel are required to be produced. The contention of defense counsel, "that the statements which must be produced are statements of witnesses called by the party possessing the witness' statements," is erroneous.

Although cases in the past have applied the rule in the manner asserted by defense counsel, those cases arose at a time when a party to a lawsuit could not impeach its own witness. Under sec. 906.07 of the current Wisconsin Rules of Evidence, however, "The credibility of a witness may be attacked by any party, including the party calling him." It is reasonable, therefore, that a party who calls a witness is entitled to any statement of the witness in possession of the opposing party. The trial judge properly ordered that the affidavit taken by defense counsel of Miles, a prosecution witness, be given to the prosecution.

Defense counsel requested that the prosecution produce all statements by the police officers that he intended to call. That request was denied. To the extent that these statements concerned the subject matter of defense witness' proposed testimony, they should, under the clear mandate of the statute, have been produced.

We conclude that the application of the statute in respect to the prior statement of Deborah Miles given to defense counsel and the nonapplication of the statute in respect to the prior statement of the police officer in possession of the prosecution constituted a denial of equal protection of the law.

We conclude, however, from the record that defense counsel never put himself in the posture to take advan-

tage of the statute. At the time the initial demand for production of police officer's statements was made, the trial judge stated: "I'm not going to rule in advance of anything. I should have said that before. We'll meet that as it comes." The trial judge thus left open to defense counsel the right to move for the production of the prior signed statement at such time as it became relevant to the witness' testimony. No such subsequent demand was made. Moreover, the subsequent examination of Officer Domagalski indicates that defense counsel was fully aware of the contents of the prior statements. Accordingly, we conclude that the trial court never excluded the demanded prior statements of the police officer; and to the extent that it may be said that defense counsel assumed that such exclusionary ruling had been made, the subsequent course of the trial shows that no prejudice resulted.

 We accordingly find no prejudicial error in respect to defense counsel's claim that he was erroneously precluded from securing the production of witness statements under sec. 971.24, Stats., or that he was denied equal protection of the law.

 Nor do we find that error was committed when the defendant was denied discovery of "notes" the district attorney might have taken during an interview with the prosecution's witness Nolte approximately one week prior to trial. Mere notes taken by the prosecutor are not producible under sec. 971.24, Stats. Only "written or phonographically recorded statements of the witness" are producible under sec. 971.24. Had defense counsel asked whether the defendant Nolte had given a statement to the assistant district attorney, an affirmative response would have entitled counsel to demand the production of the statement; but that question was not asked, and the witness had no occasion to respond in the affirmative.

The defendant claims that he was entitled to a *Goodchild* hearing on a motion to suppress photographs allegedly taken illegally from Lenarchick's home and to suppress any leads that were derived from the photographs. The motion for such hearing was denied. The illegality of the seizure does not appear to be questioned. It is of course true that a defendant has the right to have evidence illegally seized suppressed and also any leads that may inure as the fruit of the poisonous tree. *Wong Sun v. United States,* 371 U.S. 471 (1963). However, the photographs were never offered in trial, nor was there any intimation that the police obtained any leads from the illegally seized photographs. In the absence of evidence of such leads, defendant's only remedy was to have the photographs excluded at trial. *United States v. Calandra,* 414 U.S. 338, 347 (1974). But the photographs were never offered at trial, and accordingly the exclusionary rule judicially derived from the fourth amendment was powerless to protect the privacy of the aggrieved individual.

The facts of this case demonstrate the inefficacy of the exclusionary rule in protecting criminal defendants against police misconduct when the fruits of an illegal search and seizure are not offered in evidence. See *Conrad v. State,* 63 Wis.2d 616, 218 N.W.2d 252 (1974). In the instant case there was nothing to suppress.

During the course of trial, defense counsel requested the right to interview the state's witness, Deborah Miles. The court granted permission for such interview only on the condition that the district attorney be present. Defendant now contends he was thereby denied effective assistance of counsel. Under Wisconsin law we have stated that it is well settled that the accused and his counsel have the right to interview a witness before trial. *State v. Watkins,* 40 Wis.2d 398, 402, 162 N.W.2d 48 (1968). In *State v. Simmons,* 57

Wis.2d 285, 203 N.W.2d 887 (1973), this court adopted sec. 3.1(c) of the *American Bar Association Standards Relating to the Prosecution Function and the Defense Function,* which makes it unprofessional conduct for the prosecutor to obstruct communication between witnesses and defense counsel.

However, in *State v. Davidson,* 44 Wis.2d 177, 188, 170 N.W.2d 755 (1969), we held that a defendant did not have the same right to midtrial access to a prosecution witness as he had before trial. We limited the holding of *Watkins* to pretrial access.

In the instant case, because defense counsel had previously interviewed the witness Miles and because a midtrial interview was conditionally permitted, we conclude that defendant was not denied effective assistance of counsel because of inability to have access to witnesses.

The limitation upon midtrial access was, under the facts, within the discretion of the trial judge. It was the court, not the prosecutor, who limited access; and we conclude that that limitation was reasonable. Miles had displayed a recalcitrant attitude throughout the trial and, by claiming lack of memory, attempted to repudiate her earlier statement indicative of the defendant's guilt. The trial judge had every reason to believe that she was less than forthright. In view of what appeared to the trial judge to be a persistent course of fabrication, it was most appropriate for her to be interviewed only in the presence of both counsel. See *Commonwealth v. Balliro,* 349 Mass. 505, 516, 209 N.E.2d 308, 316 (1965); and *State v. Lerner,* 112 R.I. 62, 76, 308 A.2d 324, 335 (1973).

The defendant also argues that prejudicial error occurred in denying certain requested defense instructions. The defendant specifically asked that a theory-of-the-case instruction be submitted to the jury. The defendant's proposed instruction provided:

"It is the defendant's theory of the case that Michael Nolte, not the defendant, killed Ivory Williams. If the evidence which you have heard in support of defendant's theory of the case leaves you with a reasonable doubt as to the guilt of the defendant, then you must acquit him."

Additionally, the defendant requested separate instructions that emphasized the state's burden of proof in respect to identity.

There were also requested instructions which were designed to emphasize that Nolte had in fact admitted a falsehood on the stand, and that there was evidence that he had a poor reputation for truth and veracity.

■■ All these instructions were refused. A trial court has wide discretion as to instructions. *Ingalls v. State,* 48 Wis. 647, 4 N.W. 785 (1880). If the instructions of the court adequately cover the law applicable to the facts, this court will not find error in the refusal of special instructions even though the refused instructions themselves would not be erroneous. *Williamson v. State,* 31 Wis.2d 677, 143 N.W.2d 486 (1966).

This court looks to the instructions as a whole in determining whether they were appropriate, and, even though instructions were rejected which arguably were appropriate, this court will not reverse unless the failure to include the requested instructions would be likely to prejudice the defendant. It is the totality of the instructions as given that must be judged in light of the facts that the jury is asked to resolve.

■ In light of these general principles, we find no error in the instructions. It would not have been error to accept the proffered instructions, but they would have been cumulative to the instructions that the judge gave to the jury.

The defendant relies upon *Turner v. State*, 64 Wis.2d 45, 218 N.W.2d 502 (1974), for the proposition that, in general, a defendant is entitled to an instruction on a valid applicable theory of defense. In *Turner*, however, it was held that a theory-of-defense instruction under the facts would have been inappropriate because the theory had no evidentiary support in the record. The issue under the *Turner* rationale is whether there was any evidence that Nolte killed Ivory Williams. The only evidence in that respect is Lenarchick's denial of the murder and the testimony of three witnesses, including the defendant, who stated that Nolte, together with others, chased Williams shortly before his death. No one testified to seeing Nolte close to Williams with a knife. The evidentiary basis for the proposition that Nolte was the killer is extremely speculative.

Under the facts of this case, the theory-of-the-case instruction was properly refused.

Moreover, the argument of the defendant was that Lenarchick did not do the killing. He denied any culpability on the stand. In the absence of evidence of the guilt of another, Lenarchick's legal theory of defense was simply that he had not committed the crime. The general instructions given by the court were completely adequate for that situation.

The language of *Davidson* is appropriate to the present case:

"In the instant case, the legal theory of the defense was adequately covered by the instructions. The defendant entered a general plea of not guilty, putting the state to its proof. The trial judge instructed the jury on the fact of such not guilty plea having been entered, the burden of proof resting upon the state, the presumption of innocence, the necessity of the state proving each element of the crime charged, and the duty of the jury to acquit if they did not believe and find him guilty beyond a reasonable doubt. This was adequate coverage of the

legal theory of the case of the defendant." (44 Wis.2d 177, 192)

We also conclude that the general instructions in respect to the credibility of witnesses and the scrutiny that should be given to witnesses in respect to truth and veracity were sufficient. The court instructed the jury that it was the sole judge of credibility, that it should consider bias, prejudice, and motive for lying in all witnesses, that the prior inconsistent statements of Nolte and Miles should be taken into account by the jury, and that, if a witness testified falsely in one respect, all of his testimony could be disregarded. These instructions properly alerted the jury to all the significant issues sought to be raised in Lenarchick's defense. We find no error in the instructions.

Additionally, the defendant argues that his closing argument was unduly restricted. We conclude that the restrictions placed upon the defendant's closing argument, which were minimal, did not in any way prejudice Lenarchick's defense. He was permitted to argue completely Nolte's motives for lying and was allowed to present, without restriction, the evidence and the factual theory that Nolte, and not Lenarchick, had been the killer. All the significant points which are now argued to the court on appeal were fully presented to the jury. When restrictions on argument deprive a party of due process in the sense that they result in a fundamental unfairness, a new trial will be granted on this ground. *People v. Diaz,* 1 Ill. App.3d 988, 275 N.E.2d 210 (1971). While counsel has wide latitude in closing arguments, the control of the content, duration of the argument, and the form of the closing argument are within the sound discretion of the trial court. Reversal will not be granted unless there is an abuse of discretion that was likely to have affected the jury's verdict. *Schnick v. State,*

184 Wis. 661, 664, 200 N.W. 303 (1924); and *O'Neil v. State*, 189 Wis. 259, 263, 207 N.W. 280 (1926).

Applying these general principles, and after a careful review of the transcribed arguments, we conclude that counsel was not hampered in placing his case before the jury and that no limitations placed upon the oral argument affected the fundamental fairness of the submission.

Nevertheless, we conclude that the trial judge erred in two respects in the limitations placed upon counsel. He stated as an absolute rule that counsel were not to read from the transcript. It is, of course, within the trial judge's discretion to limit the reading from a transcript. The trial judge may conclude that the reading of only certain portions of the testimony may give that testimony undue emphasis, or he may conclude that extensive reading from transcripts is unduly time consuming and is disruptive of the orderly process of the trial. It is, however, error for him to prohibit the reading from the transcript altogether. The United States Court of Appeals said in *United States v. Kuta*, 518 F.2d 947 (7th Cir. 1975), there is little risk of undue emphasis because all of the evidence may be scrutinized during closing arguments:

"[T]here is no reason to establish a *per se* rule penalizing accuracy, thereby putting a premium on counsel's memory." (P. 954)

There is nothing in the present record to indicate that counsel for the defendant intended to read extensively from the record. The material that he did read, and which was objected to, consisted of only very short excerpts. Thereafter, when he was obliged by the court's ruling to call on his memory for testimony, the statements were exceedingly brief.

It was inappropriate and error for the trial judge to rule that no transcript testimony could be read by either

counsel. While such testimony may be objectionable if prolonged or disruptive of the trial, the question is one of discretion and not of *per se* exclusion. When a trial judge finds it appropriate to exclude the reading of transcript testimony, the exercise of his discretion and the basis for his discretion must be demonstrated in the record.

We conclude, however, that this error occasioned no prejudice to the defendant in this case. A comparison of counsel's recollection of the testimony was substantially equivalent to what the reading of the record would have provided.

We also conclude that it was error for the trial judge to exclude all comments by counsel on the instructions which the judge would give to the jury. It seems clear from the record that the instructions had already been agreed upon and counsel's comments referred only to the instructions that were to be given by the judge. On each occasion that counsel attempted to refer to the instructions, he emphasized that the judge had the duty to instruct the jury and that the judge would make the law clear.

Comment on the instructions is within the permitted scope of closing argument. 23A C.J.S., *Criminal Law*, sec. 1090; *Shelby v. State*, 258 Ind. 439, 442, 281 N.E.2d 885, 887 (1972); *State v. Davis*, 53 Wash.2d 387, 391, 333 P.2d 1089, 1091 (1959). Accepted manuals make it clear that comment on instructions and consideration of the evidence in terms of the instructions are accepted as an appropriate trial technique. See 3 Goldstein, *Trial Technique* (2d ed.), secs. 22.15–22.34. Counsel may not make statements of law which are of dubious correctness; however, it is unobjectionable for counsel to refer to instructions that the court intends to give or to comment upon the evidence in respect to the instructions.

In the instant case, however, we see no evidence that the limitations placed upon both the prosecution and defense in respect to reading from the transcript and in commenting upon the instructions in any way prejudiced the defendant. Counsel was permitted to give a comprehensive argument covering the entire evidence; and, although he was not allowed to refer directly to instructions, the pertinent obligation of the jury in respect to the evidence was made clear. Because, however, we find prejudicial error in respect to the denial of the defendant's right to explain his alleged confession and the denial of the right to cross-examine Nolte fully, the judgment and order are reversed and the cause remanded for a new trial.

*By the Court.*—Judgment and order reversed, and cause remanded for a new trial.