COURT OF APPEALS
DECISION
DATED AND FILED

October 29, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.** **2018AP1366-CR**

Cir. Ct. No. 2014CF2995

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MARIO MOSE JONES, JR.,

DEFENDANT-APPELLANT.

APPEAL from a judgment and orders of the circuit court for Milwaukee County: FREDERICK C. ROSA, Judge. *Affirmed*.

Before Kessler, Dugan and Fitzpatrick, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Mario Jones appeals a judgment of conviction, following a jury trial, of two counts of first-degree recklessly endangering safety, and one count of being a felon in possession of a firearm. Jones also appeals the orders denying his postconviction motions.

## BACKGROUND

¶2    On July 11, 2014, Jones was charged with one count of first-degree recklessly endangering safety and one count of being a felon in possession of a firearm. An amended information added a second count of first-degree recklessly endangering safety. According to the criminal complaint, on July 7, 2014, two victims—T.B. and S.G.—were shot in the area of 38th and Brown Streets in Milwaukee. T.B. did not identify Jones as the shooter, however; the complaint states that S.G. told Milwaukee police that he was walking along North 38th Street when a green Buick pulled up. A man S.G. knew as "Rio" exited the passenger side of the vehicle and began firing shots, striking S.G. in the abdomen. The complaint further states that S.G. later identified Jones in a photo array as the shooter.

¶3    The matter proceeded to trial where multiple witnesses testified. S.G. testified that he was shot on July 7, 2014, while walking down the street with some friends. S.G. stated that he remembered speaking with Milwaukee Police Detective Michael Slomczewski at a local hospital following the shooting, but told the jury that he remembered little about their conversation. The State asked S.G. numerous questions about S.G.'s conversation with Slomczewski, including: (1) whether S.G. recalled telling Slomczewski that a green Buick pulled up as he and his friends, including T.B., were walking; (2) whether S.G. recalled telling Slomczewski that Rio exited the passenger side of the Buick and started asking

about a missing gun; (3) whether S.G. recalled telling Slomczewski that Rio followed S.G. and T.B. and began firing shots; (4) whether S.G. recalled telling Slomczewski that he knew Rio from the neighborhood; and (5) whether S.G. recalled telling Slomczewski that he would be able to identify Rio if shown a picture. S.G. claimed not to remember any of those details of his conversation with Slomczewski. S.G. further testified that he did not recall positively identifying Jones in a photo array, claiming that if he did so, it must have been in reaction to his pain. S.G. then denied that Jones shot him.

¶4 The State then called Slomczewski. Slomczewski testified that he interviewed S.G. the day after the shooting. Slomczewski stated that he interviewed S.G. at a local hospital, where S.G. seemed alert and communicated freely and voluntarily. S.G. told Slomczewski that on the day of the shooting, he and T.B. were at a corner store and went to a nearby yard to speak with an acquaintance, Shamic. Shamic appeared frustrated and said that he was searching for a gun. S.G. then saw Shamic on the phone "point[ing] at [S.G.] and [T.B.]." A green Buick pulled up shortly thereafter. S.G. recognized the driver of the car as "Twin," and the passenger as Rio. Rio emerged from the car, asked where the gun was, and then began shooting at S.G. and T.B. as they walked away. S.G. said that he knew Rio from the neighborhood. Slomczewski told the jury that S.G. identified Jones's picture in a photo array conducted at the hospital. Slomczewski identified Jones as the person S.G. identified as Rio.

¶5 Multiple sidebars were held during Slomczewski's testimony. Following Slomczewski's testimony, and outside of the presence of the jury, the trial court discussed the sidebars. As relevant to this appeal, the court stated:

> The first objection concerned when Detective Slomczewski
> started to describe what information was revealed to him by

[S.G.]. The Defense made a hearsay objection. The State argued that under 908.01(4)(a) that the statement was … a prior inconsistent statement of the declarant. We did hear [S.G.] state on the record when he testified that he either didn't recall making statements or that he did not make those statements and so the court believed that those statements made to the detective were properly admissible under the basis cited by the State.

¶6 T.B. testified, telling the jury that on the day of the shooting, he was "kicking it" with his "brother" S.G. on the corner of 38th and Brown Streets and that S.G. was "arguing with some guys." T.B. stated that he heard gunshots and was shot in the arm. T.B. admitted that he knew Jones as "Rio," but denied that Jones was at the scene of the shooting. T.B. stated that he saw Twin and Rio in a green Buick on the day of the shooting, but not at the time of the shooting. T.B. admitted that he identified Jones in a photo array after the shooting, but told the jury that he did not know who shot him. T.B. told the jury that he only remembered telling the police that he was shot, but claimed not to remember telling the police anything about who shot him. T.B. also admitted that after the shooting he heard S.G.'s sister scream, "'Rio shot my brothers.'"

¶7 Detective Marco Salaam testified that on July 21, 2014, he interviewed T.B. and showed T.B. a photo array. Salaam stated that T.B. identified Jones as the shooter in the photo array. T.B. told Salaam that Jones "arrived along with another person, and they were inside of a green Buick LeSabre." T.B. told Salaam that Jones "exited the vehicle and approached him and his brother while they were on the porch and fired shots, and he and his brother were shot." T.B. also told Salaam that Twin was with Jones.

¶8 Jones testified in his own defense, telling the jury that he personally knew neither S.G. nor T.B, but was familiar with both of them by name. Jones stated that he suspected S.G. and T.B. held grudges against him because of a past

family dispute. Jones stated that he did not shoot either S.G. or T.B. and that he was in Rockford, Illinois on the day of the shooting. Jones testified that he went to Rockford before the fourth of July to visit his pregnant sister, who was close to giving birth. Jones stated that his sister gave birth on July 11, 2014, and that he was present for the birth. Jones told the jury that while in Rockford, he worked at his cousin's funeral home and did not have a car at his disposal. Jones said that his mother and sister picked him and his then-girlfriend up in Milwaukee and drove them to Rockford. Jones said that he did not return to Milwaukee until July 16 or 17, 2014. Jones also admitted that his nickname is Rio. He testified that he did not know Twin personally and did not know someone named Shamic.

¶9      Lexi Ford, Jones's former girlfriend, testified that she and Jones went to Rockford prior to the fourth of July. Ford stated that Jones's sister picked them up in Milwaukee and that Ford stayed in Rockford for one week, but Jones stayed longer. Ford stated that they went to Rockford to visit Jones's sister, who was about to give birth. Ford told the jury that she "believed" they were in Rockford on the day of the shooting. Ford also told the jury that she was robbed in July 2014. Ford was unsure of the date of the robbery, but suspected that it took place on July 23, 2014. Ford could not confirm whether she was in Rockford before or after the robbery.

¶10      The State called multiple rebuttal witnesses. Milwaukee Police Officer Jason Daering testified that Ford called the Milwaukee Police Department on the night of July 23, 2014, to report an armed robbery. Ford told Daering that she had been robbed that day.

¶11      Detective Mary Schmitz testified that she spoke with Ford about Ford's time in Rockford. Ford told Schmitz that she went to Rockford with Jones

to visit Jones's sister. Ford confirmed that she was robbed on July 23, 2014, and told Schmitz that she and Jones went to Rockford after the robbery. Ford also told Schmitz, however, that she and Jones went to Rockford in early July.

¶12 Detective Kenton Burtch told the jury that he interviewed Brandy Collins, the director of the funeral home where Jones claimed to work while in Rockford. Burtch testified that Collins initially denied being related to Jones, but ultimately admitted that Jones was her distant cousin. Collins told Burtch that Jones worked at the funeral home "sometime in the summer," but did not give specific dates. Collins also told Burtch that she did not have records of Jones's employment. Burtch said that toward the end of his interview with Collins, she "backed off the fact that he was working there at any given period of time, explaining that she would not tell us he was working there during this incident because she didn't want to get herself involved in anything that would bring trouble or anything to herself." Burtch also stated that he learned, while investigating an unrelated matter, that Jones and Shamic were "blood cousin[s]."

¶13 The jury convicted Jones of two counts of first-degree recklessly endangering safety and one count of being a felon in possession of a firearm. The trial court sentenced Jones to consecutive sentences totaling fourteen years of initial confinement and nine years of extended supervision.

**Postconviction Proceedings**

¶14 Jones filed a postconviction motion, arguing, as relevant to this appeal, that trial counsel was ineffective and that the trial court made an evidentiary error. Specifically, Jones argued that counsel was ineffective for failing to call Milwaukee Police Officer Erin Tischer as a witness. According to Jones, Tischer would have corroborated T.B.'s testimony, and contradicted

6

Salaam's testimony, about whether T.B. knew the identity of his shooter. Jones also argued that the trial court erred in admitting Slomczewski's testimony over Jones's hearsay objection. The postconviction court denied the motion.

¶15 In a second postconviction motion, Jones argued that trial counsel was ineffective for failing to subpoena, interview, or call to testify two alibi witnesses.[1] Jones argued that two of his sisters—Sharneice Boyd and Antiwineice Jones—could have corroborated his alibi defense that he was in Rockford at the time of the shooting. Jones attached affidavits from both sisters, each of whom stated that Jones was in Rockford during the relevant time period. Jones also submitted an affidavit stating that he told trial counsel about his sisters' potential testimony. The postconviction court again denied the motion, finding the affidavits inconsistent with each other and with trial testimony. This appeal follows.

## DISCUSSION

¶16 On appeal Jones argues that: (1) trial counsel was "prejudicially ineffective" for failing to call Tischer to "rebut the claims of Detective Salaam"; (2) trial counsel was "prejudicially ineffective" for failing to "interview, subpoena, and call two alibi witnesses whose testimony would have supported [Jones's] alibi defense"; and (3) the trial court erred in denying trial counsel's motion to exclude Slomczewski's testimony as hearsay. (Capitalization omitted.) We address each issue in turn.

---

[1] Jones filed a notice of appeal, but voluntarily dismissed the appeal in favor of filing a second postconviction motion.

## I.     Ineffective Assistance of Counsel

¶17     To prove ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that such performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Pitsch*, 124 Wis. 2d 628, 633, 369 N.W.2d 711 (1985). Performance is deficient if it falls outside the range of professionally competent representation, but we strongly presume that counsel acted reasonably within professional norms. *Pitsch*, 124 Wis. 2d at 636-37. To demonstrate prejudice, a defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "[A]n ineffective assistance of counsel claim presents a mixed question of fact and law." *State v. Champlain*, 2008 WI App 5, ¶19, 307 Wis. 2d 232, 744 N.W.2d 889. We review a postconviction court's findings of fact for clear error; whether defense counsel's performance is constitutionally infirm is a question of law, which we review *de novo. See id.*

¶18     We agree with the postconviction court that Jones did not receive ineffective assistance of counsel. Assuming, without deciding, that trial counsel should have called Tischer to testify, Jones has not demonstrated that the result of his trial would have been different. Jones asserts that Tischer originally interviewed him on the date of the incident and, based on a police report, would have told the jury that T.B. said he did not see his shooter. The postconviction court rejected this argument, finding that T.B. was an "evasive" witness and lacked credibility. The court found Salaam to be a credible witness and determined that even if Tischer had testified, it would not have bolstered T.B.'s

8

credibility. We are bound by the postconviction court's credibility determinations. *See* ***State v. Peppertree Resort Villas, Inc.***, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345. Accordingly, we conclude that trial counsel was not ineffective for failing to call Tischer as a witness.

¶19 Nor was counsel ineffective for failing to call Jones's two sisters to support his alibi defense. Jones contends that his sisters could have provided a timeline of Jones's whereabouts showing that Jones was in Rockford at the time of the shooting, and thus, could not have shot S.G. and T.B. The postconviction court disagreed, stating that "[a]n examination of [the] respective affidavits … would have presented more credibility problems for [Jones]." The record supports the postconviction court's determination.

¶20 Boyd's affidavit states that she lives in Rockford and gave birth to a baby boy on July 10, 2014. The affidavit further states that Jones came to Rockford "alone" the week before the birth, and stayed in her home for two weeks. The affidavit further states that Jones "was picked up in Milwaukee by my mother."

¶21 On the contrary, Antiwineice Jones's affidavit states that *she* picked up *both* Jones and Ford in Milwaukee. The affidavit further states that Jones and Ford stayed at the family home while in Rockford.

¶22 As the postconviction court noted, the affidavits not only contradicted each other, but also contradicted multiple aspects of both Jones's and Ford's trial testimony. Jones testified that he and Ford drove to Rockford with his mother and sister, while Ford's testimony makes no mention of Jones's mother. Ford's testimony also called into question the actual dates that she and Jones were in Rockford, as Ford could not definitively state whether they went to Rockford

9

before or after the July 23, 2014 robbery. The record supports the postconviction court's determination that "there is not a reasonable probability the jury would have reacted favorably to the mound of inconsistencies which the sisters' additional testimony would have produced." Accordingly, trial counsel was not ineffective for failing to call Jones's sisters to corroborate his alibi defense.

## II.    Trial Court Error

¶23    Jones contends that the trial court erred in permitting the jury to hear Slomczewski's hearsay testimony, namely, that S.G. told Slomczewski that Jones was the shooter. The trial court admitted Slomczewski's testimony under the prior inconsistent statement exception to the hearsay rule. *See* WIS. STAT. § 908.01(4)(a)1.[2] Jones argues that because S.G. testified that he could not recall identifying Jones as the shooter, the trial court was required to determine whether S.G.'s lack of memory was false, pursuant to *State v. Lenarchick*, 74 Wis. 2d 425, 247 N.W.2d 80 (1976).[3]

¶24    We conclude that Jones misunderstands the holding of *Lenarchick*. Contrary to Jones's argument, *Lenarchick* does not require a trial court finding that a witness's lack of memory is in bad faith before admitting prior inconsistent statements. Rather, the case holds that when "a witness denies recollection of a prior statement, and where the trial court has reason to doubt the good faith of such denial, [it] may in [its] discretion declare such testimony inconsistent and

---

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[3] The State contends that Jones did not preserve this issue for appellate review; however, for completeness, we address the merits of Jones's argument.

permit the prior statement's admission into evidence." *Lenarchick*, 74 Wis. 2d at 436. The supreme court stated that "we should reverse only if we conclude that 'apparent lapse of memory so affected ... [the] right to cross-examine as to make a critical difference in the application of the Confrontation Clause[.]" *Id.* at 444 (citation omitted). Jones fails to show that such a situation is present here.

¶25 S.G.'s alleged statements to Slomczewski revealed that S.G. made multiple statements inconsistent with his trial testimony. S.G. was subject to cross-examination about his claim that he did not remember his conversation with Slomczewski. Moreover, the postconviction court clarified that the trial court "implicitly found that [S.G.] was purposely not recalling a prior statement he had made to the detective, thereby making the detective's testimony admissible to rebut his prior inconsistent statement." The record supports this determination.

¶26 For the foregoing reasons, we affirm the judgment and the orders denying Jones's postconviction motions.

*By the Court.*—Judgment and orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.