NABBEFELD, Plaintiff in error, v. STATE, Defendant in error.

*No. 76–247–CR. Submitted on briefs April 6, 1978.—*
*Decided June 6, 1978.*
(Also reported in 266 N. W. 2d 292.)

---

[9] *See Hawpetoss v. State,* 52 Wis.2d 71, 187 N.W.2d 823 (1971); *Gelhaar v. State,* 41 Wis.2d 230, 163 N.W.2d 609 (1969), cert. den. 399 U.S. 929.

516

For the plaintiff in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender, and *Robert J. Paul,* assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *David J. Becker,* assistant attorney general.

HEFFERNAN, J. The defendant, Jack Nabbefeld, was charged with five counts of receiving and concealing stolen property in violation of sec. 943.34(2), Stats.[1]

He was tried by a jury, and on April 14, 1976, was found guilty on two of the five counts. On these two

---

[1] "943.34 Receiving stolen property. Whoever intentionally receives or conceals stolen property may be penalized as follows:

". . .

"(2) If the value of the property exceeds $100 but not more than $2,500, by a fine of not more than $5,000 or by imprisonment for not more than 5 years or both."

counts he was sentenced to concurrent terms of thirty months, to be served in the Wisconsin State Prison. The jury was unable to reach a verdict on the remaining three counts, and on those charges a mistrial was ordered.

On this appeal, the following two issues are presented: (1) Was Nabbefeld's constitutional right to confrontation violated when the preliminary-hearing testimony of a deceased witness was introduced at trial as substantive evidence of guilt; and (2) was the evidence sufficient to support Nabbefeld's conviction. We conclude that the defendant's constitutional right of confrontation was not violated and that the evidence was sufficient to support the conviction on the two counts. Accordingly, we affirm.

The charges arose out of separate thefts of seven outboard motors from three different businesses located in the vicinity of Appleton, Wisconsin. Although there was no direct proof offered in respect to the theft of the motors, the state attempted to prove in respect to five of them that the defendant Nabbefeld had received or concealed the stolen property contrary to sec. 943.34 (2), Stats. Five of the stolen motors were introduced into evidence as exhibits. Three were taken from the All Seasons Power Mart, one was taken from Ed's Boat Sales, and one was taken from the High Cliff Boat Marina.

The state brought a charge in respect to each of the five motors. A guilty verdict was returned, however, only in respect of two of the motors taken from the All Seasons Power Mart.

Count 2 involved a 10 horsepower Mercury motor taken from All Seasons, and the motor was referred to in the course of trial as Exhibit 1.

Count 4 was in respect to a 20 horsepower Mercury motor also taken from the All Seasons Power Mart and referred to at trial as Exhibit 3.

On the remaining three counts, the jury was unable to agree on a verdict. The trial on those three counts resulted in a mistrial.

In respect to the possession and concealment of the 10 horsepower motor stolen from All Seasons Power Mart, the following testimony was pertinent. The principal witness was Earl McLaughlin, who was referred to by the prosecution during the course of trial as a "fence." He testified that he had received each of the five motors from the defendant Nabbefeld and sold them. He had earlier pleaded guilty to one felony count of receiving stolen property.

In respect to Exhibit 1, McLaughlin testified that Nabbefeld told him that he had a 10 horsepower motor that he wanted to get rid of. McLaughlin then talked to Ralph Jacob, who stated he would take the motor and pay the sum of $200. McLaughlin testified that he then contacted Nabbefeld, who delivered the motor to McLaughlin's house. McLaughlin delivered the motor to a fishing partner by the name of Jack Peterson, Jacob's brother-in-law. Peterson delivered the motor to Jacob, obtained the $200 from Jacob, and turned that sum over to McLaughlin for delivery to Nabbefeld.

The testimony of McLaughlin was corroborated by that of Jacob in most respects. He acknowledged that his brother-in-law, Jack Peterson, was the intermediary between him and McLaughlin, and that he paid $200 or $225 for the motor. He stated, however, that he at no time saw McLaughlin in respect to the transaction involving the 10 horsepower motor.

In respect to Exhibit 3, the 20 horsepower motor stolen from All Seasons Power Mart, McLaughlin testified that he was contacted by the defendant Nabbefeld, who stated that he had a motor he wanted to get rid of. McLaughlin then contacted Robert Van Groll, who told McLaughlin that he would take the motor. A price of $200 was agreed

upon. McLaughlin testified that, after receiving the keys from Van Groll, he took Van Groll's automobile to a warehouse, where he met the defendant Nabbefeld. Nabbefeld placed the motor in the trunk of Van Groll's car. McLaughlin then returned the car to Van Groll with the motor in the trunk, received $200 from Van Groll, and paid it over to the defendant Nabbefeld.

McLaughlin also testified that at a later date Nabbefeld told him that the motors were "hot."

An investigator from the sheriff's department testified that he subsequently acquired the motor from Van Groll.

Van Groll's testimony poses a crucial aspect of the defendant's appeal. Although, as we view the testimony, it was largely irrelevant to the complicity of the defendant Nabbefeld, it did have some relevance to the chain of custody of the 20 horsepower motor from the possession of McLaughlin to Van Groll. Van Groll testified at the preliminary hearing conducted on February 10, 1976. Van Groll, however, died prior to the first day of trial, April 12, 1976. Over the objections of defense counsel, the prosecutor was permitted to read into the record in the presence of the jury the entire preliminary-examination testimony of Van Groll, both the direct and cross-examination. At trial, defense counsel objected to the read-in of this preliminary-hearing testimony, on the theory that he was denied cross-examination.

Van Groll's direct testimony asserted that McLaughlin came to the tavern then operated by Van Groll and told Van Groll that a truck driver needed $200 to go to California and he was offering a 20 horsepower motor for sale at that price. Van Groll testified that he gave McLaughlin $200 and his car keys and that in half an hour his automobile was returned with the 20 horsepower motor in the trunk. At no time did Van Groll mention Nabbefeld in his direct testimony. Cross-examination at

the preliminary was limited to two questions by defense counsel. Counsel asked:

"Q  Did Mr. McLaughlin tell you where he got that motor from?

"A  The understanding he gave me is a truck driver that needed money to get out to the west coast. That's all that was said.

"Q  Did you ever have any discussion with Mack McLaughlin or did you ever overhear any discussion by Mack McLaughlin regarding any of these other motors?

"A  No. I didn't."

The record reveals no objection to any questions on cross-examination, and there is no evidence to show that cross-examination was in any way limited. It is noteworthy that Van Groll's testimony in no way implicated the defendant Nabbefeld. Rather, it tended to exonerate him, because it recounted McLaughlin's statement that the source of the motor was an unidentified truck driver.

A principal argument for reversal on this appeal is based on the introduction of the transcript of Van Groll's preliminary-hearing testimony. The contention is that this constituted a denial of the right of confrontation secured under the sixth amendment to the United States Constitution and art. 1, sec. 7, of the Wisconsin Constitution.

As was discussed in *State v. Lenarchick,* 74 Wis.2d 425, 247 N.W.2d 80 (1976), evidence which may satisfy the hearsay rule or be admissible under one of its exceptions may, nevertheless, violate the right of confrontation. It is acknowledged by the defendant that, because Van Groll was /deceased, he was unavailable and, to that extent, the hearsay rules were not violated by the admission of Van Groll's preliminary-hearing testimony.

Pursuant to the hearsay exception set forth in sec. 908.045(1), Stats., where a declarant is unavailable,

his former testimony may, under some circumstances, be admissible. That section provides:

"908.045 Hearsay exceptions; declarant unavailable. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

"(1) Former Testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with the law in the course of another proceeding, at the instance of or against a party with an opportunity to develop the testimony by direct, cross-, or redirect examination, with motive and interest similar to those of the party against whom now offered."

It is apparent that the Van Groll testimony fits within that exception. The proceeding was before a court involving the same parties and the identical charges considered at trial. The motive and interest of the state at the preliminary examination in submitting the Van Groll testimony was similar to the motive and interest which impelled its offering at trial. It should be noted that the same counsel represented the defendant at the preliminary examination and at trial. His competency is not questioned on this appeal.

As asserted by defendant on this appeal, the hearsay rule is not congruent in all cases with the requirements of the confrontation clause. *State v. Lenarchick,* 74 Wis. 2d 425, 432, 247 N.W.2d 80 (1976). In *Lenarchick,* we emphasized that the very heart of the confrontation clause was embodied in the right to cross-examine witnesses. If, then, a witness is "unavailable" and he has theretofore been examined in a previous forum which afforded the right to cross-examination on the very issues that are relevant at the time the witness is unavailable, the confrontation clause is satisfied.

*California v. Green,* 399 U.S. 149 (1970), is instructive on this point. In *Green,* the witness was in fact physically

available at trial but was completely uncooperative, and his examination at trial became substantially meaningless. Accordingly, his preliminary-examination testimony was allowed in the record. The United States Supreme Court justified the admission of the preliminary-examination testimony, because the opportunity for meaningful examination at trial was thwarted. It went on to say, however, that, where a witness' statement had been given at the preliminary hearing under circumstances which approximated those at trial, confrontation was afforded then and need not be afforded again where the witness was physically absent, or in a practical sense "unavailable," at trial. The Supreme Court stressed the fact that, at the preliminary examination, the defendant was under oath, that the adverse party was represented by the same counsel who represented him at trial, that every opportunity was given to cross-examine, and that the proceedings were conducted before a judicial tribunal which made a record of the proceedings. In dicta pertinent to the case before this court, the United States Supreme Court went on to say:

"In the present case respondent's counsel does not appear to have been significantly limited in any way in the scope or nature of his cross-examination of the witness Porter at the preliminary hearing. If Porter had died or was otherwise unavailable, the Confrontation Clause would not have been violated by admitting his testimony given at the preliminary hearing—the right of cross-examination then afforded provides substantial compliance with the purposes behind the confrontation requirement, as long as the declarant's inability to give live testimony is in no way the fault of the State. Compare *Barber v. Page, supra,* with *Motes v. United States,* 178 U.S. 458 (1900)." 399 U.S. at 166.

This court has followed the same rationale. Where a witness is unavailable for trial and the defendant has had a prior opportunity to cross-examine, preliminary-hear-

ing testimony may be admitted without impinging on the rules of evidence or the constitutional rights of confrontation. *State v. Lindsey,* 53 Wis.2d 759, 193 N.W.2d 699 (1972); *LaBarge v. State,* 74 Wis.2d 327, 246 N.W.2d 794 (1976).

Counsel for Nabbefeld recognizes these cases but contends that they should not be interpreted to mean that, in all circumstances, evidence adduced at a preliminary hearing is *ipso facto* to be admitted at trial when the witness becomes unavailable. We agree with the defendant's caveat in that respect. There are cases which demonstrate that, in some circumstances, in order to satisfy the confrontation clause, the prior testimony must bear some indicia of reliability sufficient to guarantee that the trier of fact may on a reasonable basis evaluate the truth of the prior statement. The defendant cites *Dutton v. Evans,* 400 U.S. 74 (1970).

The position of the United States Supreme Court in this respect has recently been stated in *Mancusi v. Stubbs,* 408 U.S. 204 (1972). There, testimony adduced in the first trial was admitted at a subsequent trial. The defendant claimed that the introduction of this evidence violated the confrontation clause. He also claimed he had been denied effective assistance of counsel at the first trial. Under those circumstances, the court examined the situation at the first trial before reaching the conclusion that the prior testimony was admissible. The court concluded that the defense attorney at the first trial had been afforded an adequate opportunity to cross-examine the witness and that he appropriately availed himself of that opportunity. It concluded from these facts that there were sufficient indicia of reliability to afford the subsequent trier of fact a basis for evaluating the truth of the testimony at the first trial. It is apparent from *Mancusi,* that it was the question of effective counsel which impelled the court to scrutinize

not only the opportunity for cross-examination but the actual circumstances surrounding the cross-examination itself.

A similar inquiry was made by the United States Supreme Court in *Barber v. Page*, 390 U.S. 719 (1968), where, in a preliminary hearing, one of the co-defendants waived his privilege against self-incrimination. His attorney then withdrew from the representation of that defendant but continued to represent the other co-defendant. Counsel then chose not to cross-examine his former client, who testified. Under the circumstances, the United States Supreme Court thought it appropriate to question whether the non-testifying defendant validly waived his right to cross-examine the co-defendant.

It is apparent then that the United States Supreme Court has not always focused on the opportunity to cross-examine to the exclusion of the actual circumstances of cross-examination.

In some circumstances, therefore, the mere opportunity to cross-examine may not satisfy the confrontation clause. We stress, however, that, in the cases brought to our attention, such further inquiry has been made only under circumstances where cross-examination, although permitted in respect to former testimony, may have been inadequate. In the cases referred to, cross-examination was arguably inadequate, because counsel was allegedly incompetent or was confronted with an actual or potential conflict of interest which inhibited him from carrying out a meaningful cross-examination although full opportunity was afforded.

We are not unmindful of the position of defense counsel that a preliminary examination has a different purpose than the trial itself. At a preliminary examination, the issue is whether there is probable cause to believe that a felony has been committed by the defendant, while at trial the issue is whether the defendant is guilty be-

yond a reasonable doubt of having committed a particular felony. This problem is referred to in *United States v. Lynch,* 499 F.2d 1011, 1023 (D.C. Cir. 1974). Therein, the court said:

"In suitable cases there may be no constitutionally significant difference, for purposes of protecting confrontation rights, between the opportunity to cross-examine at a preliminary hearing and at a prior trial. California v. Green, 399 U.S. 149, 90 S. Ct. 1930, 26 L. Ed.2d 489 (1970). But a preliminary hearing is less likely to produce extensive cross-examination and impeachment of witnesses than a trial because of the different functions respectively of the trial, designed to determine guilt or innocence and the preliminary hearing, designed to determine only the existence *vel non* of probable cause to hold an accused to answer to the grand jury. *See* Barber v. Page, 390 U.S. 719, 725, 88 S. Ct. 1318, 20 L. Ed.2d 255 (1968)."

Justice Brennan in his dissent to *California v. Green,* 399 U.S. 149, 189 (1970), also emphasized the different purpose of cross-examination at a preliminary hearing and cross-examination at trial.

On the other hand, this court cannot ignore the fact that, even in cases where the issues at a preliminary examination and at trial are identical, counsel may, for reasons of defense strategy, decline an opportunity of unlimited cross-examination. *See, Phillips v. Wyrick,* 558 F.2d 489, 496 (8th Cir. 1977). It would be contrary to the interests of justice to prohibit the use of the preliminary-hearing testimony of an unavailable witness when the circumstances reveal that cross-examination was declined as a matter of strategy to protect the interests of the defendant.

We are satisfied from a review of the state and federal cases that, where it is apparent that the prior testimony involved the same issues and the same parties and no

limitation was placed upon the right of cross-examination, such facts in the ordinary case are sufficient to satisfy the requirements of the confrontation clause. Where unusual circumstances are apparent, the court may have reason to inquire into whether a meaningful confrontation was indeed afforded a defendant.

The instant case, however, does not necessitate such inquiry. The record establishes that the issues, the parties, and the counsel at the preliminary examination and at trial were identical. No question has been raised as to the competency of counsel, and in fact the testimony of Van Groll and the cross-examination of him established facts that were exculpatory of the defendant. Van Groll's testimony implicated McLaughlin, not Nabbefeld; and defense counsel's examination, though limited to two questions, made it clear that Van Groll's testimony in no way incriminated Nabbefeld. The cross-examination established that McLaughlin got the motor from an unnamed truck driver.

It would appear that the defendant's counsel had full opportunity to cross-examine Van Groll, and his examination was both adequate and meaningful. Since there was no error in respect to the admission of this testimony, either evidentiary or constitutional, we are not obliged to determine whether the testimony was prejudicial. It is apparent, however, that it was not. Defendant's right of confrontation was not violated, and the trial judge properly permitted the admission of the prior preliminary-examination testimony of the deceased witness, Van Groll.

The defendant also argues that the evidence on Counts 2 and 4 was insufficient to convict beyond a reasonable doubt. As the summary of evidence at the beginning of this opinion shows, the testimony, if believed, would indeed enable a jury to conclude beyond a reasonable

doubt that Nabbefeld received or concealed the stolen property. The only link to Nabbefeld, however, was the testimony of McLaughlin. If McLaughlin's testimony were disbelieved or found to be incredible as a matter of law, the jury's verdict could not be sustained.

The argument of the defense on this appeal appears to be that, because the jury refused to convict on three of the counts which had been testified to by McLaughlin, it found his testimony incredible, and, accordingly, given this fact, the testimony of the witness McLaughlin in respect to the two counts on which a guilty verdict was returned is equally incredible. Merely to state the argument, if such be the position of the defense counsel, is to expose its fallacy. While the jury, for reasons of its own, may have thought McLaughlin's testimony with respect to three of the counts was insufficient, it was not obliged to conclude that his testimony in respect to the other counts was incredible.

The defense bolsters its argument by pointing out that the convictions were obtained only on Count 2, where there was additional testimony by Jack Peterson, and on Count 4, where the testimony of Robert Van Groll in the form of the preliminary-hearing transcript was offered. Neither of these two witnesses, however, mentioned the defendant. Accordingly, it is argued that the jury relied upon the non-probative evidence of Jack Peterson and Robert Van Groll to give credence to the testimony of McLaughlin in respect to Counts 2 and 4 although at the same time it found his testimony insufficient in respect to Counts 1, 3, and 5.

It should be pointed out that this argument is premised on multiple misconceptions. The jury did not acquit the defendant on Counts 1, 3, and 5. Rather, its deliberations resulted in a hung jury, which, at the most, would indicate that McLaughlin's totally uncorroborated testimony was not given implicit credence by the jury.

Although the testimony of Peterson and Van Groll did not mention the defendant's name, it had some probative effect to the extent that it was not totally inconsistent with McLaughlin's testimony. McLaughlin's testimony implicated both Peterson and Van Groll in the chain of custody of the respective motors, and the testimony of those two individuals, to that limited extent, corroborated McLaughlin. Although, as we stated above, Van Groll's testimony disclaimed any knowledge that the motor he received from McLaughlin was originally in the possession of Nabbefeld, the defendant's argument seems to be premised on the theory that a jury must either totally believe or totally disbelieve a witness. The law is to the contrary. A jury, even where a single witness is inconsistent and testifies to diametrically opposed facts, may choose to believe one assertion and disbelieve the other. *Graves v. Travelers Insurance Co.*, 66 Wis.2d 124, 224 N.W.2d 398 (1974).

The question of credibility between witnesses or in respect to the same witness is a matter for the jury to determine and not for a trial judge or for this court, unless it can be said that the testimony is incredible as a matter of law.

[8]

It is also argued by counsel on this appeal that the evidence of guilt on Count 3 was stronger than the evidence supporting the counts for which guilty verdicts were returned. That may well be true; but, again, the right to be inconsistent in this respect is the jury's prerogative, not this court's. We stated in *State v. Mills,* 62 Wis.2d 186, 191, 214 N.W.2d 456 (1974):

"It has been universally held that logical consistency in the verdict as between the several counts in a criminal information is not required. The verdict will be upheld

despite the fact that the counts of which the defendant was convicted cannot be logically reconciled with the counts of which the defendant was acquitted."

The United States Supreme Court in *Hamling v. United States,* 418 U.S. 87, 100 (1974), *rehearing denied* 419 U.S. 885 (1974), declined to impose a requirement of consistency in verdicts where a verdict of guilty on one count was upheld although the jury was unable to reach a verdict on a related count.

In the instant case, the evidence, if believed, was of such nature and of such probative value that we cannot say that the jury acting reasonably could not have been convinced beyond a reasonable doubt of the defendant's guilt.

Although there was evidence to show that McLaughlin's reputation for truth and veracity was suspect, such evidence merely posed the question of credibility without resolving it. The determination of McLaughlin's credibility was for the jury. *See, Chapman v. State,* 69 Wis.2d 581, 583, 230 N.W.2d 824 (1975).

The jury in this case was free to give whatever credence it wished to McLaughlin's testimony. His testimony, taken in conjunction with other evidence relevant to Counts 2 and 4, was sufficient beyond a reasonable doubt to sustain the jury's verdict of guilty.

*By the Court.*—Judgment and order affirmed.