MᴄCʟᴇʟʟᴀɴᴅ, Plaintiff in error, v. Sᴛᴀᴛᴇ, Defendant in error.

*No. 76–367–CR.   Argued April 6, 1978.—Decided June 30, 1978.*
(Also reported in 267 N.W.2d 843.)

146

148

For the plaintiff in error the cause was argued by *Robert J. Paul,* assistant state public defender, with whom on the briefs was *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Marguerite M. Moeller,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, J.   The defendant, Jerry McClelland, was charged with an armed robbery, which took place at a farmhouse in Rock county on December 23, 1975. After a trial by jury, the defendant was found guilty, and following conviction was sentenced to a term of not to exceed twenty-five years in the state prison. A motion for a new trial was denied. Writs of error were issued to review the judgment of conviction and to review the order denying the motion for a new trial.

No challenge has been made to the sufficiency of the evidence. Suffice it to say that the testimony believed by the jury established that defendant McClelland, together with another person identified as James Tubbs, at pistol point robbed three residents of a rural farmhouse of $45 in cash, a quantity of marijuana, two shotguns, a .22 caliber rifle, and a movie camera.

The defense was predicated on mistaken identification and on alibi.

On this appeal, two grounds for reversal are urged. The first is that the trial judge abused his discretion by the exclusion of the testimony of a proposed alibi witness. The second is that the trial court committed prejudicial error when it permitted the admission of evidence offered by the state which tended to show criminal activity by the defendant in an incident unrelated to the armed robbery and which occurred subsequent to the armed robbery. Although we find no error in respect to the exclusion of the alibi witness, we conclude that the admission of extrinsic evidence to show unrelated and arguably criminal conduct constituted plain error. We reverse.

The first error charged is in respect to the exclusion of an alibi witness by the name of Winston Bowdin. Bowdin's name was furnished to the district attorney four days prior to trial. At that time the district attorney stated that he did not think he would oppose the use of Bowdin's testimony. At the time of trial, however, he objected to such testimony because the information received was insufficient to make possible any investigation of the witness prior to trial. The district attorney's objection to Bowdin's appearance was sustained, and Bowdin was not permitted to appear.

The pertinent statutes are secs. 971.23(8)(a) and (b), Stats. 1973:

"971.23   Discovery and inspection.

"(8)  Notice of Alibi.  (a) If the defendant intends to rely upon an alibi as a defense, he shall give written notice thereof to the district attorney at the arraignment or at least 20 days before trial stating particularly the place where he claims to have been when the crime is alleged to have been committed together with the names and addresses of witnesses to the alibi, if known.

"(b)  In default of such notice, no evidence of the alibi shall be received unless the court, for cause, orders otherwise."

The trial in this case commenced on May 26, 1976. The first notice of an alibi defense was not filed until May 18, 1976, only eight days prior to trial. The record reveals, however, that both the prosecutor and the defense counsel were engaged in another trial, and it was agreed that alibi notices in the McClelland trial need not be filed until the completion of that earlier case.

The notice of alibi filed on May 18, 1976, stated that, at the time the armed robbery allegedly was committed, the defendant was in Rockford, Illinois. He stated that four named witnesses would be called to establish the alibi defense. No objection was made to the production of any of these witnesses at trial, although the alibi notice and the list of witnesses was not submitted by the defense attorney in conformity with the time limitations of the statute. Subsequently, on May 22, only four days before trial, the names of two additional alibi witnesses were submitted to the prosecutor, and still another alibi witness' name was submitted on the second day of trial.

Winston Bowdin's name was submitted on May 22, 1976, just four days before trial, and it was his appearance and testimony that was objected to.

The trial judge, in sustaining the objection to the production of Bowdin, stated that the defendant had been out on bond for a substantial period of time, that the notice of trial had been sent out on April 6, 1976, and that the defendant himself had an obligation to supply his counsel with the names and addresses of alibi witnesses at such time that the prosecution could have made a reasonable investigation. The trial court, in referring to the defendant, said:

"He had been out on bond for a substantial period of time. . . . Magically at the last minute the defendant is able to come up with witnesses whereas he couldn't before. The Statute is clear that the notice is insufficient. This is a matter in the sound discretion of the

Court. The Court for cause shown can alter the situation or change the time. The Court does not see that cause shown. I just can't find it within myself to hold that way. That to me would be a perversion of the purpose of the alibi Statute. I will allow those witnesses to testify, namely, Mr. Williams and Mr. Davis and the defendant's wife as consented to by Mr. Miller, since he is willing to let the defendant's wife testify even though she wasn't mentioned on the list as an alibi witness, and that's as far as the Court will go."

On this appeal it is argued that cause for permitting the late-listed witness to appear was shown, because the defendant met most of the alibi witnesses but once at a party which he claimed he was attending when the armed robbery took place. He claimed he did not know these people previously. In addition, some of these people had moved since the party, and it was difficult to identify and locate them. Defendant's position is that he did the best he could under the circumstances.

It is also argued that the defense counsel, as a white person, had difficulty in getting information from the black community of Rockford, Illinois, in respect to the witnesses, all of whom were black.

The purpose of the alibi statute, as stated in *State v. DiMaggio,* 49 Wis.2d 565, 182 N.W.2d 466 (1971), is to avoid the sudden and unexpected appearance of witnesses for the first time at trial under such circumstances that it is impossible for the state to make any investigation in respect to the alibi defense or in respect to the witnesses who intend to establish that defense. *See, State ex rel. Simos v. Burke,* 41 Wis.2d 129, 163 N.W.2d 177 (1968). The statute does, nevertheless, provide that evidence of alibi may be received in the exercise of judicial discretion for cause shown. Sec. 971.23(8)(b), Stats.; *Jensen v. State,* 36 Wis.2d 598, 153 N.W.2d 566, 154 N.W.2d 769 (1967).

The defendant contends that the trial judge's rejection of Bowdin's testimony evidenced no reasoning process and, accordingly, the exclusion of the testimony was the product of an abuse of discretion. The statement of the trial judge quoted above demonstrates that discretion was exercised. Three appropriate reasons for the exclusion of Bowdin's testimony were set forth in the record. The trial judge stated that the defendant was out on bond and had an obligation to cooperate with his counsel to seek out and provide his counsel with the appropriate information for the alibi defense, that the purpose of the statute would be perverted by the allowance of the testimony of last-minute alibi witnesses, and that the prosecutor had taken into account that defense counsel was engaged in another trial and had not unreasonably insisted on the statutory time limits.

The trial judge's decision to exclude the testimony was clearly the result of an expressed rationale based on the facts. Under the standards set forth in *McCleary v. State,* 49 Wis.2d 263, 182 N.W.2d 512 (1971), this constituted an exercise of discretion, since it showed a considered decision on the basis of the facts in the record and upon the appropriate legal standards.

It is argued, however, on appeal that the trial judge used an inappropriate standard, because the duty to investigate and to secure alibi witnesses is an obligation of the defendant's attorney and not of the defendant personally. In essence, this argument denies the accepted obligation of a defendant to cooperate with his defense counsel. It was upon this obligation of the defendant personally that the trial judge rested the first consideration for the exclusion of Bowdin's testimony.

The rationale of *State v. Moffett,* 46 Wis.2d 164, 174 N.W.2d 263 (1970), supports the trial judge's decision. In *Moffett,* the defendant, on the morning of trial, first

provided his defense attorney with the name of a purportedly essential witness, who could not be produced forthwith. This court, in upholding the trial court's refusal to grant Moffett a continuance, stated that the prejudice, if any, stemmed from the defendant's own lack of diligence. It is the implicit holding of *Moffett* that the defendant personally is to be held responsible when he has not timely cooperated with his attorney to insure the production of necessary witnesses. The same rationale is appropriate here.

The same case, *State v. Moffett,* is authority for the proposition that, where error is claimed as a result of the exclusion of evidence, an offer of proof must be made in the trial court as a condition precedent to the review of any alleged error. The rationale of *Moffett* is specifically incorporated in the Wisconsin Rules of Evidence, sec. 901.03 (1) (b), Stats.:

"Sec. 901.03 Rulings on evidence. (1) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and

"(b) *Offer of proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked."

No offer of proof was made in respect to Bowdin's testimony; and, even were we to hold—which we do not —that the court erred in such exclusion, we could not conclude that Bowdin's testimony would have been crucial or its exclusion prejudicial.

No cause was shown for the introduction of the untimely-proffered alibi testimony, and we conclude that the trial judge did not abuse his discretion in excluding such testimony.

During the direct testimony of the accused McClelland, his counsel established that defendant had been convicted

of crimes on four occasions in the past. When asked by his counsel when he was last convicted, he responded, "1972." Counsel then asked, "Now, since that time have you been involved in any criminal activity." To this question, McClelland answered, "No." On cross examination, the prosecutor asked the defendant questions relating to an incident which occurred after the date on which the armed robbery occurred. This was for the apparent purpose of showing that the defendant had been involved in "criminal activity" subsequent to 1972.

On cross examination, the prosecutor established that five days subsequent to the armed robbery, someone fired shots into the McClelland home and that McClelland, a few hours later, in the company of James Tubbs, the alleged accomplice in the robbery, went looking for the person suspected of having shot into the home. McClelland acknowledged that he went to Robbie Isabell's house looking for the person suspected. During the course of cross examination, the prosecutor attempted to elicit an admission from McClelland that he had forced his way into the Isabell home and pointed a gun at Robbie Isabell to gain entrance to the house. While the visit to the Isabell house was admitted by McClelland, he denied having a weapon and denied having forced his way onto the premises. This entire line of inquiry was objected to by McClelland's counsel on the ground that it was beyond the scope of direct examination and was not material to the issue of the commission of the robbery on December 23, 1975. The court permitted the cross examination to proceed, stating, "I think the door has been opened on direct examination."

From a perusal of the record and in light of the prosecutor's statement when he commenced this phase of the examination—"[Y]ou had testified on direct examination that you haven't been involved in any criminal activity since 1972—" it is apparent that the judge concluded

that this phase of the cross examination was within the scope of direct examination as dealing with defendant's assertion that there had been no criminal activity since 1972.

Since *Boller v. Cofrances,* 42 Wis.2d 170, 166 N.W.2d 129 (1969), this court has not adhered to the rule that cross examination can only be conducted within the scope of direct examination, but instead has concluded that any material or relevant matters may be inquired into. An appropriate purpose of cross examination is to test the credibility of a witness. It is clear that what the prosecutor was attempting to do was to undermine the credibility of McClelland's testimony generally by attempting to show that, contrary to his statements on direct examination, McClelland had indeed engaged in criminal activity, i.e., entry of a dwelling at gunpoint, subsequent to 1972. As a consequence, the cross examination was appropriate and material for that limited purpose, and cross examination was permissible to that extent.

Sec. 906.08, Stats., permits the use of specific instances of conduct of a witness for the purpose of attacking the credibility on cross examination of the witness himself; and, to the extent that the cross examination was used only for that limited purpose, it was admissible, and the judge did not err in so ruling.

Although this testimony elicited at cross examination was admissible for the purpose of testing credibility because it was probative of untruthfulness in respect to the claim of no "criminal activity," counsel on this appeal argues that its admission was an abuse of discretion, because, as evidence relating to a crime other than that of which the defendant stood accused, it had the effect of showing, inferentially at least, that the defendant was of

a disposition to commit crimes at gunpoint and, therefore, was guilty of the armed robbery charged.

Sec. 904.04(2) of the Wisconsin Rules of Evidence provides in part:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."

Evidence will, under this rule, be excluded where its purpose is to prove the disposition of a defendant to commit crime. The reason for the rule was first explicitly set forth in *Whitty v. State*, 34 Wis.2d 278, 292, 149 N.W.2d 557 (1967). Therein we said:

"The character rule excluding prior-crimes evidence as it relates to the guilt issue rests on four bases: (1) The over-strong tendency to believe the defendant guilty of the charge merely because he is a person likely to do such acts; (2) the tendency to condemn not because he is believed guilty of the present charge but because he has escaped punishment from other offenses; (3) the injustice of attacking one who is not prepared to demonstrate the attacking evidence is fabricated; and (4) the confusion of issues which might result from bringing in evidence of other crimes."

In *State v. Spraggin*, 77 Wis.2d 89, 252 N.W.2d 94 (1977), a case which followed the rationale of *Whitty*, we stated that the rule is " 'predicated on the fundamental principle of justice that the bad man no more than the good ought to be convicted of a crime not committed by him.' " (at 103)

As pointed out above, however, specific instances of other conduct may be raised in cross examination for the purpose of attacking the credibility of a witness. Sec. 906.08(2), Stats. However, even if the evidence of prior conduct is admissible, as in this case, to test credibility,

the trial court nevertheless has the obligation to determine whether the prejudicial effect of the evidence outweighs its probative value.

Sec. 904.03, Stats., provides that otherwise admissible and relevant evidence:

". . . may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

It is apparent from the record that the state's cross examination was relevant to the question of credibility and was admissible for that limited purpose. It is also clear from the record that evidence on a collateral matter which attempted to show that the defendant had made a forced entry at gunpoint carried with it a high probability of prejudice to the defendant.

The record demonstrates that the court did not undertake the necessary weighing process under sec. 904.03, Stats., to determine whether the probative value of the evidence was outweighed by its prejudicial effect. The judge, however, was not asked to make that determination. The only objection made by defense counsel was that the testimony elicited on cross examination with respect to the entry into the Isabell home was that it was not material and beyond the scope of the direct examination. The trial judge ruled correctly, we conclude, on the objection posed and held that the testimony was not to be excluded for the reasons given by defense counsel. He was not asked to exclude the evidence because of its possible prejudice. Had the counsel objected on that ground, it would have been the obligation of the judge to exercise his discretion and to determine whether the otherwise admissible evidence should have been ex-

cluded because of unfair prejudice to the defendant. He was not asked to so rule. As we said in *Whitty v. State, supra:*

"This court has not looked with favor upon claims of prejudicial error based upon the trial court's failure to act when no action was requested by counsel." (at 290)

In addition, sec. 901.03(1)(a), Stats., provides:

"901.03 Rulings on evidence. (1) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and
"(a) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context. . . ."

We accordingly conclude that the trial judge ruled correctly on the objection made and had no obligation to exclude the evidence on the ground of undue prejudice when that objection was not made.

The prosecution, however, was not content with its efforts to undermine McClelland's credibility by limiting its attack to cross examination. Instead, it sought to prove by extrinsic evidence, the testimony of Robbie Isabell, that the statement of McClelland on direct examination that he had engaged in no criminal activity since 1972 was false and also, by the same evidence, to show that the answers given on cross examination in respect to the entry of the Isabell home were false.

Robbie Isabell was called by the state as a rebuttal witness. She stated that the defendant pushed the door in, took out a gun, pointed it at her head, forced his way into the house to wake up one Wambel, who was suspected of the shoot-up by McClelland. This extrinsic testimony is prohibited by sec. 906.08(2), Stats. That portion of the Rules of Evidence provides:

"Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crimes as provided in s. 906.09, may not be proved by extrinsic evidence. . . ."

As stated above, and as the rule further provides, instances of misconduct, however, may be inquired into on cross examination if probative of truthfulness or untruthfulness.

An analogous limitation on the bringing of extrinsic proof is set forth in McCormick, *Evidence*, sec. 42, p. 84. Therein it is stated:

"In jurisdictions which permit character-impeachment by proof of misconduct for which no conviction has been had, an important curb is the accepted rule that proof is limited to what can be brought out on cross-examination. Thus, if the witness stands his ground and denies the alleged misconduct, the examiner must 'take his answer,' not that he may not further cross-examine to extract an admission, but in the sense that he may not call other witnesses to prove the discrediting acts."[1]

There is an additional factor to be considered as a general policy consideration when impeachment is sought. In addition to the specific rule in respect to extrinsic proof of misconduct, another rule is applicable. Impeachment of a witness on the basis of collateral facts introduced by extrinsic testimony is forbidden. The court has previously considered the definition of a collateral matter. *State v. Spraggin*, 71 Wis.2d 604, 239 N.W.2d 297 (1976). Relying on 3A Wigmore, *Evidence*, sec. 1003, p. 961, the court said:

"Wigmore suggests that a matter is collateral if it does not meet the following test:

" 'Could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction?' *Wigmore, supra*, at sec. 1003." 17 Wis.2d at 623.

[1] Sec. 904.04(2), Stats., however, prohibits in Wisconsin the specific type of character-impeachment referred to by McCormick.

It is apparent that testimony in respect to the entry of the Robbie Isabell house could only have been admissible to show a contradiction, and then only for the limited purpose of testing credibility. This evidence, accordingly, was of a collateral nature and subject to the rule which governs impeachment on collateral matters. That rule is stated in McCormick, *Evidence, supra,* sec. 47, p. 98:

"[A] witness may not be impeached by producing extrinsic evidence of 'collateral' facts to 'contradict' the first witness's assertions about those facts. If the collateral fact sought to be contradicted is elicited on cross-examination, this safeguarding rule is often expressed by saying the answer is conclusive or that the cross-examiner must 'take the answer.' By the better view, if the 'collateral' fact happen to be drawn out on direct, the rule against contradiction should still be applied. The danger of surprise is lessened, but waste of time and confusion of issues stand as objections." (at 98)

As an example of the application of this rule, McCormick, p. 99, states:

"Facts showing misconduct of the witness . . . are collateral, and if denied on cross-examination cannot be proved to contradict."

We accordingly conclude that the testimony of Robbie Isabell was a violation of the generalized rule prohibiting impeachment on collateral matters; and, in addition, it was admitted in contravention of the specific strictures of sec. 906.08, Stats. The general rationale of the rule that prohibits extrinsic contradiction of collateral facts for impeachment purposes is set forth in *State v. Spraggin,* 71 Wis.2d 604, 622, 239 N.W.2d 297 (1976). The court stated:

"A rule has evolved that prohibits contradiction, more commonly generalized as impeachment, of fact testimony that is collateral to the issues of the particular case.

McCormick, *Evidence*, at p. 98, sec. 217 (2d ed. 1972); 3A Wigmore, *Evidence*, secs. 1001, 1002 (Chadbourn, rev. 1970). Cross-examination on such matters is to be limited, and it has been said that the examiner must abide by the answers to his questions on immaterial subjects. 4 Jones, *Evidence*, sec. 25.8 (6th ed. 1972). *See: Greene v. Agnew* (1915), 160 Wis. 224, 227, 151 N.W. 268. The imprecision of conclusions that can be drawn from a contradiction on immaterial matters, when obviously only the impeaching effect is involved, is the logical basis for the bar. Auxiliary policy reasons include distraction and confusion of unprobative issues for the trier of fact, the prejudice and surprise to the proponents of the contradicted witness when his testimony on collateral matters is challenged, *Wigmore, supra,* and perhaps even the unwarranted impression created of the contradicted witness who may be able but unprepared to explain or refute the contradiction of immaterial facts. These reasons are of course not applicable when the testimony is on a material issue, so much depends on the determination of what is 'collateral.' "

By the introduction of the extrinsic evidence of the entry into Robbie Isabell's dwelling, the prosecution injected into the trial distracting and confusing issues that were not probative of whether the defendant McClelland committed the robbery of the persons in the farmhouse. The wisdom of the policy which prohibits impeachment on collateral issues is demonstrated by this case.

Because, however, no objection was raised, under sec. 901.03(1)(a), Stats., the defendant is not entitled to have the error considered on appeal as a matter of right. The defendant's ability to rely on this error depends on determining whether it can be denominated "plain error" within the meaning of sec. 901.03(4), Stats. *See, Virgil v. State*, post, p. 166, 267 N.W.2d 852 (1978). We conclude that the testimony of Robbie Isabell was prejudicial, because it tended to prove more than

the mere contradiction of an extraneous and collateral fact. It tended to show that the defendant was a violent person who would seek self-help at the point of a gun to rectify a real or fancied wrong. The tenor of the record suggests that the introduction of this collateral evidence prevented the jury's focus upon the real issue of the case: Was McClelland guilty of the armed robbery of the farmhouse. Sufficient emphasis was placed upon the entrance into the Robbie Isabell house to create a great likelihood that the real issues were not given the single-minded attention of the jury. Such evidence on its face, without any cautionary instruction, substantially affected the defendant's right to a fair trial. We conclude, therefore, that the introduction of this evidence constituted plain error, warranting reversal.

While we find that it would have been appropriate for counsel to have objected to McClelland's cross-examination testimony on the ground that its prejudicial effect outweighed its probative value, we do not reverse on that ground. The admission or exclusion was within the sound discretion of the trial court, and no objection was made which would have triggered the exercise of that discretion. We conclude, however, that the error in permitting extrinsic impeaching testimony on a collateral issue was plain error. We accordingly reverse and remand for a new trial.

*By the Court.*—Judgment and order reversed, and cause remanded for a new trial.

CONNOR T. HANSEN, J. *(dissenting)*. I recognize that the Rules of Evidence prohibit the impeachment of a witness' credibility by extrinsic evidence of instances of the witness' prior misconduct, other than criminal convictions. Sec. 906.08 (2), Stats. In my opinion this statute was never intended to be construed so as to per-

mit a defendant in a criminal case to testify falsely with impunity.

The rule excluding evidence of prior misdeeds rests on the concerns that such evidence will (1) result in confusion of issues and distraction of the jury with collateral matters; (2) unfairly surprise the defendant, who has not prepared evidence to rebut allegations about his prior conduct; and (3) unfairly prejudice the defendant by suggesting to the jury that he is a violent or lawless person likely to commit crimes and deserving of punishment. *Whitty v. State,* 34 Wis.2d 278, 149 N.W.2d 557 (1967). In the present case, however, considerations of confusion, unfair surprise and prejudice are outweighed by the need to prevent perjury and to protect the integrity of the proceedings at trial.

This is not a case in which the impeaching evidence confused the jury with collateral issues. The testimony of Robbie Isabell was admitted, not for the purpose of impeaching a minor witness, but to impeach the defendant himself. Where the defendant takes the stand and asserts an alibi defense, his credibility is central to the case. In the case at bar, the defendant, on direct examination, made a sweeping statement that he had not been involved in criminal activity since 1972. On cross-examination he elaborated on this testimony by specifically denying that he had entered the Isabell home at gunpoint. This testimony was then directly contradicted by the testimony of Robbie Isabell, without undue consumption of time or diversion of the trial into collateral issues. I do not believe this was the type of excursion into distracting or ancillary matters which the rules of evidence are meant to prohibit.

Nor can the defendant complain that he was unfairly surprised by the testimony of Robbie Isabell. It was the defendant and his counsel who, on direct examination, broached the subject of the defendant's criminal activity

since his last conviction. This is not a case in which inquiry is made into an area for the first time on cross-examination and where the cross-examiner who ventures to raise the question must be content to "take his answer" as he receives it.

Nor can the defendant complain that he was prejudiced by evidence of his past actions when he took it upon himself, on direct examination, to make a blanket statement that he had not been involved in criminal activity since 1972. This testimony opened the door and, once open, it should be equally open to the prosecution. As applied by the majority, sec. 906.08(2), Stats., limits the prosecution to whatever testimony it can elicit from the defendant on cross-examination. Such a construction of the statute forewarns the defendant that it will be extremely difficult, if not impossible, to impeach his false testimony. If he adheres to his story, he can lie baldly about any collateral matter, free of exposure by other witnesses or by documentary evidence. In such a situation, I believe any danger of prejudice to the defendant from the admission of extrinsic evidence is far outweighed by the compelling interest in the effective determination of truth at trial, which requires that a false impression, deliberately created by the defendant, be subject to contradiction by other witnesses.

In *Walder v. United States,* 347 U.S. 62 (1954), a defendant charged with the sale of narcotics testified on direct examination that he had never possessed, sold, conveyed or handled any narcotics. The United States Supreme Court held that by making this claim, the defendant had opened the door, and that a government agent could therefore testify that heroin had been seized from the defendant's home, in the defendant's presence, in an unrelated incident two years earlier. Introduction of this impeachment testimony was permitted despite the fact that the heroin had been seized unlawfully, and

would not have been otherwise admissible against the defendant.

The court declined to permit the defendant to turn the inadmissibility of the evidence to his own advantage as a "shield against contradiction of his untruths." *Walder v. United States, supra,* at 65. "[T]here is hardly justification," the court said, "for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility." *Walder v. United States, supra,* at 65.

This reasoning is sound and has been applied in other, analogous situations to prevent a defendant from lying with impunity. Thus an incriminating statement unlawfully obtained from a defendant is ordinarily inadmissible, but may be admitted for purposes of impeachment, *Harris v. New York,* 401 U.S. 222 (1971) ; *Oregon v. Hass,* 420 U.S. 714 (1975), and the nature of a defendant's prior criminal convictions, although ordinarily inadmissible, may be shown where the defendant denies having been convicted or fails to accurately state the number of convictions. *State v. Hungerford,* 54 Wis.2d 744, 748, 749, 196 N.W.2d 647 (1972).

For the foregoing reasons, I respectfully dissent.

I am hereby authorized to state that Mr. Justice CALLOW joins in this dissent.