STATE, Plaintiff-Respondent, v. STAWICKI,
Defendant-Appellant.

Court of Appeals

*No. 79–767–CR. Submitted on briefs October 12, 1979.—*
*Decided November 15, 1979.*
(Also reported in 286 N.W.2d 612.)

For the defendant-appellant the cause was submitted on the briefs of *Stephen M. Glynn* and *Shellow & Shellow* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, with whom on the brief was *Thomas J. Balistreri,* assistant attorney general.

Before Decker, C.J., Moser, P.J., and Cannon, J.

DECKER, C.J.   Defendant David J. Stawicki appeals from an order of the circuit court dated April 10, 1979 denying his motion for postconviction relief pursuant to sec. 974.06, Stats.  Stawicki was convicted by a jury of endangering safety by conduct regardless of life, party to a crime (secs. 941.30, 939.05, Stats.).  The same jury found him not guilty of two counts of battery.

Stawicki's postconviction motion charged that four violations of his constitutional rights occurred at trial: insufficient evidence to sustain his conviction beyond a

reasonable doubt; a denial of due process because of the introduction of other crimes evidence by the prosecutor; a denial of due process and a right to a fair trial because of the court's restrictions on the length and content of closing argument; a denial of due process because the jury was not instructed it must agree unanimously upon the party-to-a-crime category applicable to Stawicki. We disagree and affirm the order of the trial court.

The charges arose out of an occurrence at Romey's Tap in Franklin, Wisconsin at approximately 2 a.m. on April 2, 1977. Earlier in the evening, David Laurishke and Dale Hinkel, a minor, had stopped at Romey's for a drink and a soda. Before leaving, Hinkel entered the restroom and was struck several times by someone. Laurishke and Hinkel were then pushed out of the bar.

Hinkel and Laurishke went to a bowling alley at 76th and Oklahoma where they met the defendant and other friends. Approximately eight persons decided to return to Romey's. They traveled to Romey's in four cars. The prosecution offered evidence that in the parking lot of Romey's, the defendant broke two bottles against the head of Russell Sossaman. The facts surrounding the incident are in dispute.

Defendant argues that the evidence adduced at trial was insufficient to establish the defendant's guilt beyond a reasonable doubt.

The threshold question is whether sufficiency of the evidence can be raised through a postconviction sec. 974.06 motion. Historically, only issues of jurisdictional or constitutional dimensions can be reached through a postconviction sec. 974.06 motion.[1] *Loop v. State,* 65

---

[1] "974.06 Post-Conviction Procedure

(1) After the time for appeal or post-conviction remedy provided in s. 974.02 has expired, a prisoner in custody under sentence of a court claiming the right to be released upon the ground that the sentence was imposed in violation of the U. S. constitution or

Wis.2d 499, 501, 222 N.W.2d 694, 695 (1974). Until recently, sufficiency of the evidence has been a constitutional issue only if there is "no evidence" of guilt, in which case there is a denial of due process. *Loop, supra* at 502, 222 N.W.2d at 696: *Weber v. State,* 59 Wis.2d 371, 379, 208 N.W.2d 396, 400 (1973).

The United States Supreme Court has recently held that in a challenge of a state criminal conviction, an applicant is entitled to habeas corpus relief if it is found that upon the record adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781, 2792, 61 L. Ed. 560, 576–77 (1979). The Court reasoned that the "no evidence" due process standard was inadequate to guarantee compliance with the constitutional prohibition against criminal conviction of any person except upon proof beyond a reasonable doubt as established by *In re Winship,* 397 U.S. 358 (1970).

"After *Winship* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson, supra* at 318, 99 S. Ct. at 2789, 61 L. Ed. at 573. [Footnote omitted.] In applying this standard, the Court asserted that it "gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts" and that *"all of the evidence* is to be considered in the light most favorable to the prosecution." *Id.* [Emphasis in original.]

the constitution or laws of this state, that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

The record evidence here, when viewed in the light most favorable to the prosecution, is sufficient to reasonably support a finding of guilt on the charge of endangering safety by conduct regardless of life beyond a reasonable doubt.

Peter Mark testified that he was in Romey's Tap at approximately 2 a.m. when he heard a disturbance outside. He and two or three others stepped out on the porch overlooking the parking lot behind Romey's and saw vehicles parking on the road and people getting out of the cars. Several of these people approached the building and began arguing with those on the porch about the altercation that had occurred earlier in the evening. At this point, Russell Sossaman walked through the parking lot towards the tavern. He was shuffling along with his hands in his pockets. Mark testified that the defendant then ran toward Sossaman from the area of the cars parked on the road. He was carrying two bottles which appeared to be wine bottles. He approached Sossaman from the rear, jumped in the air, and struck him in the head with the bottle held in his right hand and broke the bottle against Sossaman's head. The defendant then hit Sossaman in the head with the bottle held in his left hand, also breaking that bottle. Defendant hit Sossaman a third time with his right hand. Sossaman fell to the ground.

Defendant argues that this evidence is insufficient because it is the testimony of a witness under the influence of alcohol and because the injuries Sossaman received when considered with the defendant's conduct do not demonstrate conduct imminently dangerous to another and evincing a depraved mind regardless of life within the meaning of sec. 941.30, Stats.

The effect of the witness's state of sobriety on the credibility of his testimony is for the jury to decide.

*Ruiz v. State*, 75 Wis.2d 230, 235, 249 N.W.2d 277, 280 (1977). Intoxication per se does not render the testimony of a witness incredible as a matter of law unless "no finder of fact could believe the testimony," *Ruiz* at 235, 249 N.W.2d at 280. However, *Jackson* requires us to review that evidence in the context "whether the record evidence would reasonably support a finding of guilt beyond a reasonable doubt."

Mark testified that he had about eight to ten drinks between 8 p.m. and 2 a.m. He testified that he felt he was under the influence of alcohol when the fight broke out, but was not drunk. On that evidence of intoxication, we cannot find it unreasonable for the jury to believe and rely on Mark's testimony with respect to the events inculpating Stawicki of endangering safety by conduct regardless of life.[2]

The defendant also argues that the evidence is insufficient to prove that the defendant's conduct was imminently dangerous to Sossaman or that the defendant's behavior was of such a character that it evinced a depraved mind regardless of life.

The defendant's initial argument, that the evidence is insufficient because there is little evidence regarding Sossaman's injuries, is misguided. Actual injury is not an essential element of the crime. *Balistreri v.*

---

[2] The jury evidently did disbelieve Mark's testimony as to the defendant's attack upon himself and another and as a result, acquitted the defendant on the battery charges. This does not, as the defendant contends in his reply brief, render the verdict irrational. A jury need not totally believe or totally disbelieve a witness. *Nabbefeld v. State*, 83 Wis.2d 515, 529, 266 N.W.2d 292, 299 (1978). That the jury disbelieved Mark in part does not alter the fact that the testimony supporting the jury's verdict on the sec. 941.30 charge is not incredible as a matter of law and reasonably supports a finding of guilt of "endangering safety beyond a reasonable doubt."

*State,* 83 Wis.2d 440, 454, 265 N.W.2d 290, 296 (1978) ; *State v. Olson,* 75 Wis.2d 575, 592, 250 N.W.2d 12, 21 (1977).

A defendant's conduct is imminently dangerous to another if it is inherently, apparently and consciously dangerous to life. Death need not be intended, but the conduct as well as the instrumentality used must have the potential to cause death. *Balistreri, supra* at 455, 265 N.W.2d at 296–97. The defendant twice struck the victim's head with sufficient force to break wine bottles. He then struck the victim a third time. The evidence is sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that the defendant's conduct was inherently, imminently, apparently and consciously dangerous to the life of Sossaman and that the attack with the wine bottles had the potential of causing his death. The evidence was also sufficient to allow a rational jury to find beyond a reasonable doubt that Stawicki's conduct evinced the existence of a depraved mind devoid of regard for the life of another and implied a constructive intent to maim or kill. *Balistreri, supra* at 458, 265 N.W.2d at 298.

We conclude that the evidence is sufficient as to each element of the crime to reasonably support a finding of guilt beyond a reasonable doubt.

Defendant also objects to the trial court's admission into evidence of "other crimes," the court's time and content restrictions on closing argument, and the court's jury instruction on party to a crime. Generally, errors in admission of evidence and other procedural errors are not constitutional or jurisdictional issues and therefore are not properly raised by a sec. 974.06 motion. *Loop, supra* at 502, 222 N.W.2d at 695; *Weber, supra* at 377, 208 N.W.2d at 399. Nonetheless, in considering the objections on their merits, we conclude that the trial court did not commit prejudicial or constitutional

error and that the claimed errors were not fundamentally unfair and were not a due process violation.

Defendant contends that he was denied due process of law by the prosecutor's eliciting other crimes evidence.[3] The evidence to which the defendant refers was elicited by the prosecutor's cross-examination of Lisa Warner:

Q. Have you ever been with David when he was involved in a bar room fight?
A. Just once.
Q. Did he wear glasses during the fight?
A. Yes, he had them on.
Q. That the only time you were with David when he was involved in a fight?
A. Yes.
Q. How long have you been David's girfriend?
A. About five years.[4]  (L. at 359–60.)

---

[3] "904.04  Character Evidence Not Admissible to Prove Conduct; Exceptions; Other Crimes

. . . .

(2) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[4] Defendant also quotes the following section of the transcript in the "other crimes" section of its brief.

Mr. Eisenberg [defense counsel]: And my understanding is the other one is a juvenile. The defendant, Stawicki, has one previous conviction. Stawicki has one previous conviction, Laurishke has one previous conviction, and Hinkel is a juvenile, so he has no previous record.

Court: Is that it?

Mr. Schaefer [prosecutor]: That is it, your Honor, but as I indicated, I thought it would be appropriate to deal with this before Mr. Eisenberg commenced his case. (L. at 279–80.)

The significance of this portion is unclear as it took place out of the presence of the jury. No evidence was presented to the jury on the nature or date of the conviction and no evidence connecting the conviction to the bar room fight was testified to by Warner.

Defendant contends that the only purpose of this exchange was to attack defendant's credibility by reference to prior acts of misconduct. The questions were improper, defendant submits, because they were posed before the issue of defendant's credibility had arisen,[5] because the purpose of the questions was to impeach on a collateral matter by use of extrinsic evidence, and because the exchange violated sec. 906.08(2), Stats.[6]

The permitted purposes of the questions when propounded were twofold: to refute defendant's theory that he had been misidentified as the perpetrator of the alleged crime, and to impeach specific statements of Warner. Lisa Warner had testified on direct examination that she had never seen the defendant without glasses "unless he was sleeping or something, washing, or taking a shower." The prosecutor's questions appear intended to show that when engaging in fighting, the defendant did not wear glasses. Testing the credibility of witness Warner is a proper purpose of cross-examination. *McClelland v. State*, 84 Wis.2d 145, 155, 267 N.W. 2d 843, 847 (1978) ; sec. 906.11(2), Stats.

The totality of the evidence presented to the jury on the conviction was an answer of "Yes, I have" by the defendant to the prosecution's question of whether he had ever been arrested and convicted of a crime. When the prosecution asked "How many times?", the defense stipulated to one previous conviction.

[5] Defendant had not yet testified nor had he offered opinion or reputation evidence placing his credibility in issue.

[6] "906.08  Evidence of Character and Conduct of Witnesses

. . . .

(2) Specific Instances of Conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility, other than conviction of crimes as provided in s. 906.09, may not be proved by extrinsic evidence. They may, however, subject to s. 972.11(2), if probative of truthfulness or untruthfulness and not remote in time, be inquired into on cross-examination of the witness or on cross-examination of a witness who testifies to his or her character for truthfulness or untruthfulness."

The propounded questions were not attempted impeachment on a collateral issue. The issue of identity was central to the defendant's case. Defendant's counsel had, at several points in the trial, attempted to show that while the person identified by the prosecution's witnesses as the attacker was not wearing glasses, the defendant always did and was wearing glasses that evening. We do not consider the circumstance that the defendant wore his glasses when engaged in a bar room fight to be "other crimes" evidence. If we did consider the evidence elicited as "other crimes" evidence, it was admissible pursuant to sec. 904.04 (2), States, as an attempt at refuting the misidentification theory of the defendant. The evidence may have attacked the defendant's credibility but his remedy was to seek a limiting instruction pursuant to sec. 901.06. He failed to make such a request.

The defendant neither objected at trial to the questions propounded to Lisa Warner, nor moved to strike the answers as provided by sec. 901.03 (1) (a), Stats. Therefore, Stawicki cannot now claim as a matter of right that relevant evidence, though potentially prejudicial, was not properly weighed in the context of sec. 904.03. *McClelland v. State,* 84 Wis.2d 145, 152–58, 267 N.W.2d 843, 849 (1978). We find no plain error.

Lisa Warner was the first witness to testify when the trial was resumed for the afternoon at 2:20 p.m. on November 10, 1977. Her entire direct, cross- and redirect examination consisted of her answers to thirty-four questions. Her testimony was immediately followed without a break in the trial by the testimony of the defendant wherein he claimed he was wearing glasses at the time of the occurrence which was the subject of the crime for which he was convicted. It is patent that if we found error in the receipt of the "other crimes" evidence, it is statutorily and constitutionally harmless.

Defendant also argues that the elicited testimony violates sec. 906.08 (2), Stats., because it constitutes an ex-

trinsic and impermissible specific instance of the conduct of a witness (the defendant) attacking the credibility of the witness (the defendant). The defendant does make this argument cumulatively rather than alternatively, and thus it is inconsistent with his earlier argument because in this instance the defendant assumes he was a witness although he had not testified when the questions were propounded while in the earlier argument the defendant assumed he was not a witness because he had not yet testified. Nonetheless, we disregard that inconsistency and respond to the argument.

The questions propounded to Lisa Warner, if construed to be an attack on her credibility as a witness, are not violative of sec. 906.08(2), Stats., because they do not constitute extrinsic evidence and were expressly permissible on cross-examination.

The questions propounded to Warner were admissible for the purpose of establishing identity of the defendant. Although the questions might have elicited responses attacking the defendant's credibility, in fact they did not. In any event, as we have earlier explained, the evidence was admissible for one purpose and thus was merely subject to a limiting instruction which was waived by defendant's failure to request it. Similarly, the defendant, by failing to object, waived the weighing process necessary if prejudicial but relevant evidence is to be excluded. *McClelland, supra.* The identity of the defendant as the perpetrator of the crime was an essential fact and was required to be established as part of the proof in this case. It was not collateral and not within the general ban on the introduction of extrinsic evidence to impeach the defendant, assuming him to have been a witness at the time the evidence was offered.

The questions propounded to Warner cannot be construed to be an attack upon the defendant's credibility

because: (1) he had not yet testified, and (2) the testimony was obviously directed toward establishing the identity of the defendant as the person who committed the crime. Admissibility for the purpose of establishing identity prevails over inadmissibility for another purpose (sec. 901.06, Stats.). If the defendant wished the limited purpose of the evidence to be determined, it was his obligation to make timely objection and motion to restrict its use. *See, e.g., Seraphine v. Hardiman,* 44 Wis.2d 60, 67, 170 N.W.2d 739, 743 (1969); *Huse v. Milwaukee County Expressway Comm.,* 16 Wis.2d 225, 228, 114 N.W.2d 429–30 (1962). "[I]t is not incumbent upon the state to seek a limitation as to its own evidence where no request for a limiting instruction is made by the challenging party." *State v. Amundson,* 69 Wis.2d 554, 570, 230 N.W.2d 775, 784 (1975). [Citations omitted.]

The questions propounded to Warner immediately preceded the defendant's testimony in which he claimed he was wearing eye glasses until they were knocked off his face during the brawl that followed breaking a bottle on Sossaman's head. Section 906.11(1) accords to the trial judge reasonable control over the order of interrogating witnesses. Although the authority was not invoked, it seems unreasonable and contrary to the spirit of the Wisconsin Rules of Evidence to interpret the succession of the witnesses in a manner which would make the evidence inadmissible merely because one witness preceded another. Such an interpretation is contrary to the goal of fairness in administration prescribed by sec. 901.02, Stats., particularly where no objection was made. Therefore, we think it alternatively appropriate to construe the defendant as a witness within the meaning of sec. 906.08(2) and find that the questions were proper even if they attacked the defendant's credibility.

Defendant argues that he was denied a fair trial and due process of law by the court's restrictions on closing argument. The trial court limited closing argument to

forty-five minutes per side and prohibited counsel from reading jury instructions to the jury during closing argument.

Control of the content and duration of the argument are within the discretion of the trial court. *State v. Lenarchick*, 74 Wis.2d 425, 457, 247 N.W.2d 80, 97 (1976). Reversal is granted only where there is an abuse of discretion that was likely to have affected the jury's verdict. *Lenarchick, supra.* Forty-five minutes was reasonable time to close a case of this size. Even assuming that the limitation was erroneous, there is no prejudice. Though defense counsel was cut off at the forty-five minute mark, the defendant does not identify one argument or area of testimony that counsel failed to cover due to the time limitation. Our review of the transcribed jury argument establishes that all major areas of testimony were reviewed. It is not likely that the jury would have decided differently had defense counsel been allowed more time.

The restriction on reading of the instructions was not prejudicial. Defense counsel was allowed to comment on the jury instructions and in doing so, virtually quoted five parts of the instructions. These comments dissipated any likelihood that the jury was affected by the restriction.

Finally, defendant contends that he was denied a fair trial, due process of law and a unanimous jury verdict by the court's instruction on party to a crime pursuant to sec. 939.05, Stats. Defendant submits that the court erred in not instructing the jury that it was required to agree unanimously on the manner in which the defendant was a party to the crime. This contention was explicitly rejected in *Holland v. State*, 91 Wis.2d 134, 280 N.W.2d 288 (1979).

We find no fundamental unfairness in the defendant's trial and we find no due process clause violations of his rights.

*By the Court.*—Order affirmed.